Ira S. Sacks
Mary L. Grieco
Safia A. Anand
DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

Lisa T. Simpson
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 5th Avenue
New York, NY 10103
(212) 506-5100

*Attorneys for Plaintiff*



**JUDGE McMAHON**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SANEI CHARLOTTE RONSON LLC,

                             Plaintiff,

       -against-

GMA ACCESSORIES, INC.,

                        Defendant.

------------------------------------------------------------x



Civil Action No.

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

Plaintiff Sanei Charlotte Ronson LLC, by its attorneys Dreier LLP and Orrick, Herrington

& Sutcliffe LLP, alleges on knowledge as to its own acts and otherwise on information and belief

as follows:

## NATURE OF THE ACTION

1.     This Complaint seeks a declaratory judgment of non-infringement.  Specifically, it

seeks a declaration that Plaintiff Sanei Charlotte Ronson LLC's use of the personal name of

designer Charlotte Ronson, *i.e.*, CHARLOTTE RONSON, as a trademark to sell high-end

fashion goods does not infringe any rights held by Defendant GMA Accessories, Inc. in the mark

CHARLOTTE. This Complaint further seeks the cancellation of Defendant's federal trademark

registrations based on Defendant's fraud and trademark misuse. In addition, due to Defendant's

persistent and continued efforts to interfere with Plaintiff Sanei Charlotte Ronson LLC's rightful

use of the CHARLOTTE RONSON trademark, this Complaint seeks an injunction and damages

for Defendant's tortious interference with business relations and common law unfair competition,

pursuant to New York state law.

## JURISDICTION AND VENUE

2.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule

57 of the Federal Rules of Civil Procedure seeking a declaration of rights and/or other legal

relations of the parties to this litigation with respect to an actual and justiciable controversy

arising under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, as well as for

cancellation of certain trademarks pursuant to 15 U.S.C. §§ 1119, 1120 and damages under state

law.

3.      This Court has jurisdiction over this matter pursuant to the Lanham Act (15

U.S.C. § 1051 *et seq.*); 28 U.S.C. §§ 1331, 1338 and 1367; and the Declaratory Judgment Act

(28 U.S.C. § 2201), and related claims under the common law of the State of New York. Venue

is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this

judicial district.

**THE PARTIES**

4.     Plaintiff Sanei Charlotte Ronson LLC ("Ronson") is a New York limited liability company with its principal place of business at 1701 Avenue of the Americas, Suite 301, New York, New York 10018.

5.     Defendant GMA Accessories, Inc. ("GMA") is a New York corporation with its principal place of business at 1 East 33rd Street, New York, New York 10016.

**THE CHARLOTTE RONSON BRAND**

6.     In September 1999, Charlotte Ronson (the individual, hereinafter defined as "Ms. Ronson") began selling her original clothing designs using the mark C. RONSON. In May 2002, Ms. Ronson opened a clothing boutique in downtown New York City known as C. RONSON. In approximately February 2005, Ms. Ronson began to use her full name, CHARLOTTE RONSON, as a trademark on apparel, shoes, bags and accessories, operating as C. Ronson, Inc. ("C. Ronson").

7.     On October 8, 2004, C. Ronson filed an application to register CHARLOTTE RONSON as a federal trademark in International Class 25 for use in connection with clothing, namely, tops, pants, skirts, dresses, hats, caps, jackets, coats, headwear, underwear, sleepwear, and footwear (Serial No. 78/507,236).

8.     On October 28, 2004, C. Ronson filed an application to register CHARLOTTE RONSON as a federal trademark in International Class 18 for use in connection with handbags, wallets, luggage, backpacks, travel bags, and cosmetic cases sold empty (Serial No. 78/507,248).

9.     On October 11, 2005, C. Ronson filed an application to register CHARLOTTE RONSON as federal trademark in International Class 14 for use in connection with jewelry, namely, necklaces, bracelets, earrings, rings, pins, and watches (Serial No. 78/507,242).  These

three trademark applications (for Classes 14, 18 and 25) and all common law rights associated with the use of the CHARLOTTE RONSON mark are collectively referred to herein as the "CHARLOTTE RONSON Marks".

10.    CHARLOTTE RONSON merchandise was sold by C. Ronson until 2006. On March 2, 2006, C. Ronson, Inc. assigned its rights to the CHARLOTTE RONSON Marks, among others, to Sanei Charlotte Ronson, LLC (defined above as "Ronson"), a joint venture in which the individual Charlotte Ronson holds a significant equity interest. The assignments of the pending trademark applications were recorded with the U.S. Patent and Trademark Office on April 14, 2006. CHARLOTTE RONSON merchandise is now sold by Ronson.

11.    In addition to Ms. Ronson's downtown NYC boutique, as alleged above, CHARLOTTE RONSON branded clothing and related accessories have been sold in numerous retail locations across the United States and around the world and through many retail websites, including Bloomingdale's, Nordstrom, Fred Segal, Ron Herman and Shopbop.

12.    The CHARLOTTE RONSON brand is well-known in the fashion industry, having obtained a great deal of unsolicited press coverage in numerous renowned publications including Vogue, Teen Vogue, Jane, Maxim, InStyle, Cosmopolitan, WWD, Elle, Marie Claire, Elle Girl, the Daily News, W, Lucky,  Nylon, the New York Post, People and Harper's Bazaar. The CHARLOTTE RONSON brand was also mentioned in an infamous "shout-out" in a Jay-Z song.

13.    CHARLOTTE RONSON branded clothing and accessories are worn by numerous well-known celebrities, including Janet Jackson, Jennifer Lopez, Kate Moss, Gisele Bündchen, Lindsay Lohan, Paris Hilton, Jessica Simpson, Jennifer Love Hewitt and MTV's Su Chin Pak.

14.    As a result of the extensive and continuous use of the CHARLOTTE RONSON Marks, Ronson has developed substantial good will among its customers and the CHARLOTTE

RONSON marks have acquired secondary meaning in that they have come to be associated in the minds of the public with Ronson and to signify the high-end, high quality products offered by Ronson.

15.    Ronson always uses the name CHARLOTTE RONSON and does not use the name CHARLOTTE alone.  The two words always appear in the same font as one unitary mark.

## GMA's ALLEGED USE OF THE MARK "CHARLOTTE"

16.    GMA, which does business as Capelli New York, is, according to its website (located at www.capelli-ny.com), in the business of selling fashion accessories and novelty items, such as hair accessories, socks, leg warmers, sandals, flip flops, slippers, plush toys and pet accessories.

17.    Ms. Ronson was not aware of GMA or its products until early 2005 when GMA's counsel sent a cease and desist letter to Ms. Ronson's counsel.  At that time, it came to Ronson's attention that GMA owned certain trademark registrations for CHARLOTTE and CHARLOTTE & FRIENDS.

18.    Specifically, GMA asserts rights to the following U.S. trademark registrations and applications pending before the U.S. Patent and Trademark Office (collectively referred to as the "GMA Charlotte Marks"):

  a. U.S. Registration No. 2,216,405, issued January 5, 1999, for the mark CHARLOTTE in International Class 26 for hair accessories, namely, hair clips, scrunchees, ribbons and braids.

  b. U.S. Registration No. 2,217,341, issued January 12, 1999, for the mark CHARLOTTE in International Class 18 for sacks and bags, namely, handbags made of textiles and beads.

  c. U.S. Registration No. 2,535,454, issued February 5, 2002, for the mark CHARLOTTE in International Class 25 clothing, footwear and headgear, namely hats, scarves, gloves and socks.

d.      U.S. Registration No. 2,561,025, issued April 16, 2002, for the mark CHARLOTTE in International Class 9 for sunglasses.

e.      U.S. Registration No. 3,242,358, issued May 15, 2007, for the mark CHARLOTTE in International Class 22 for bags for securing valuables; bands for wrapping or binding; belts, not of metal, for handling loads; fabric and polyester mesh net used for storing toys and other household items; garment bags for storage; mesh bags for storage; multi-purpose cloth bags; packaging bags of textile material; rice straw bags (kamasu); shoe bags for storage; string.

f.      Use-based Application, filed June 30, 2006, for the mark CHARLOTTE in International Class 14 for the following goods: bonnet pins of precious metal; bracelets; bracelets of precious metal; brooches; buckles for watchstraps; charms ; chokers; costume jewelry; cuff-links; earrings; gemstones; gold and its alloys; hat pins of precious metal; iridium and its alloys; jewelry; jewelry pins for use on hats; lapel pins ; necklaces; ornamental pins; ornaments of precious metal; osmium and its alloys; pendants; picture frames of precious metal; platinum and its alloys; precious metal alloys; purses and wallets of precious metal; rhodium and its alloys; rings being jewelry; silver and its alloys; tiaras (Serial No. 78/921503).

g.      Use-based application, filed October 2, 2006, for the mark CHARLOTTE in International Class 24, for the following goods: Bath linen; Bath sheets; Bath towels; Beach towels; Bed blankets; Bed linen; Bed sheets; Bed spreads; Blanket throws; Chenille fabric; Children's blankets; Children's towels; Cloth coasters; Cloth napkins for removing make-up; Comforters; Contoured mattress covers; Cotton base mixed fabrics; Cotton fabric; Covered rubber yarn fabrics; Crepe cloth; Crib bumpers; Crib canopies; Curtain fabric; Curtain loops of textile material; Curtains; Curtains made of textile fabrics; Diaper changing mats; Diaper changing pads not of paper; Dining linens; Dish cloths; Draperies; Dust ruffles; Duvet covers; Duvets; Eiderdown covers; Eiderdowns; Fabric diaper stackers; Fabric flags; Fabric for boots and shoes; Fabric of imitation animal skin; Fabric table runners; Fabric table toppers; Fabric valances; Fabric window coverings and treatments, namely curtains, draperies, sheers, swags and valances; Face towels; Feather beds; Felt and non-woven textile fabrics; Fiberglass fabrics for textile use; Fireproof upholstery fabrics; Fitted toilet lid covers; Flannel; Flax fabrics; Frieze; Gauze fabric; Gift wrap of fabric; Hand towels; Hand-towels made of textile fabrics; Hemp base mixed fabrics; Hemp yarn fabrics; Household linen; Inorganic fiber mixed fabrics; Jeans fabric; Jersey fabrics for clothing; Jersey

material; Jute fabrics; Kitchen linens; Kitchen towels; Knitted fabrics; Knitted fabrics of chemical-fiber yarn; Knitted fabrics of cotton yarn; Knitted fabrics of wool yarn; Labels of cloth; Lap rugs; Mixed fiber fabrics; Narrow woven fabrics; Net curtains; Nylon fabric; Oil cloths; Pillow cases; Pillow covers; Pillow shams; Pillowcases; Place mats of textile material; Polyester fabric; Pot holders; Puffs; Quilts; Ramie fabric; Rayon fabric; Receiving blankets. Regenerated fiber yarn fabrics; Rubberized cloths; Sackcloth; Sail cloth; Semi-synthetic fiber fabrics; Shams; Shower curtains; Silk-cotton mixed fabrics; Synthetic fiber fabrics; Table cloths not of paper; Table linen; Taffeta; Tapestries of textile; Terry towels; Textile fabric of animal skins imitations; Textile fabrics for home and commercial interiors; Textile fabrics for lingerie; Textile fabrics for the manufacture of clothing; Textile labels; Throws; Ticking fabric; Towel sets; Towels; Traced cloths for embroidery; Tricot quilts; Tulle; Unfitted fabric furniture covers; Upholstery fabrics; Velvet; Wash cloths; Washcloths; Washing gloves; Washing mitts; Window curtains; Wool base mixed fabrics; Wool yarn fabrics; Woolen fabric; Woolen blankets; Worsted fabrics; Woven fabrics; Zephyr fabric (Serial No. 77/012,104).

h.    U.S. Registration No. 2,412,362, issued December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 3 for cosmetics, namely perfume, lip gloss, and hair lotions.

i.    U.S. Registration No. 2,412,360, issued December 12, 2000, for the mark CHARLOTTE & FRIENDS in International Class 25 for clothing, footwear and headgear, namely hats, scarves, gloves and socks.

j.    U.S. Registration No. 2,412,359, issued December 12, 2000 for the mark CHARLOTTE & FRIENDS in International Class 26 for hair accessories, namely hair clips, scrunchees, ribbons and braids.

k.    U.S. Registration No. 2,444,120, issued April 17, 2001 for the mark CHARLOTTE & FRIENDS in International Class 28 for toys, namely plush animals.

l.    U.S. Registration No. 2,682,145, issued February 4, 2003, for the mark CHARLOTTE & FRIENDS in International Class 9 for sunglasses.

19.    In connection with several of these registrations, GMA's counsel filed a Section 8

& 15 Declaration, wherein it declared under oath in relevant part that "[t]he owner is using or is

using through a related company or licensee the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is **still in use in commerce on or in connection with all goods and/or services as identified above…..**" (Emphasis added). (Such a declaration is hereinafter referred to as an "8&15 Declaration".)

20.     GMA submitted 8&15 Declarations, asserting that it was using the mark CHARLOTTE or CHARLOTTE & FRIENDS in connection with all the goods identified, in each of the following Registrations:  Reg. No. 2,217,341 (filed November 26, 2004), Reg. No. 2,216,405 (filed January 5, 1999), Reg. No. 2,412,360 (June 12, 2006), Reg. No. 2, 412, 359 (filed December 12, 2006), Reg. No. 2,535,454 (filed February 14, 2007); Reg. No. 2,561,025 (filed May 22, 2007).

21.     GMA further swore under oath when filing its trademark applications based on use for the GMA CHARLOTTE Marks and later filing Statements of Use with respect to its intent-to-use applications that GMA was using the mark in connection with all the goods identified in those applications as of the date claimed.

22.     GMA's sworn statements in its use-based applications, Statements of Use and 8&15 Declarations that it was using the GMA CHARLOTTE Marks on all the goods identified in those applications and registrations as of the dates claimed were false.

23.     GMA also swore under oath in each of its trademark applications that it was unaware of anyone else with a right to use a mark that was likely to cause confusion with GMA's CHARLOTTE Marks.

24.     Based on its federal registrations, GMA opposed C. Ronson's applications for the mark CHARLOTTE RONSON in Class 14 on October 31, 2005 (Opposition No. 9167353), Class 25 on December 20, 2005 (Opposition No. 91168148) and Class 18 on July 31, 2006 (Opposition No. 91172117). These oppositions have all been consolidated under Opposition No. 91167353 (the "Opposition") before the Trademark Trial and Appeal Board (the "TTAB").

25.     In the course of the Opposition, GMA moved for summary judgment arguing that the TTAB should refuse to register the CHARLOTTE RONSON Marks as a matter of law. On November 6, 2006, the TTAB denied GMA's motion for summary judgment, noting the numerous other brands in fashion share common personal names: "applicant's evidence of third-party registrations that share a common name in the fashion industry raises a genuine issue of material fact regarding the perception of prospective consumers of applicant's and opposer's marks." *See GMA Accessories, Inc. v. Sanei Charlotte Ronson, LLC*, Opposition No. 91167353 (TTAB Nov. 6, 2006). A true and correct copy of this decision is attached hereto as Exhibit A.

26.     The Opposition is ongoing. Ronson's motion for summary judgment is currently pending before the TTAB.

**"CHARLOTTE" IS A WEAK MARK AND CONSUMERS ARE
NOT LIKELY TO BE CONFUSED AS TO THE SOURCE, ORIGIN
OR SPONSORSHIP OF PRODUCTS USING THE CHARLOTTE RONSON MARKS**

27.     "Charlotte," standing alone, is a popular female first name, and, as a result, is commonly used as a style designation in the apparel and jewelry industry.

28.     "Charlotte" also has geographic significance as the capital of the state of North Carolina, the 20th largest city in the United States and home to the Charlotte campus of the University of North Carolina – UNC Charlotte.

29.    The use of "Charlotte" in the apparel and accessories business is so widespread that Ronson is aware of at least 49 companies that use "Charlotte" as a style designation for their various fashion products.

30.    In addition, several other designers use the name "Charlotte" as brands in connection with their apparel and accessories lines, including, but not limited to, CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE SOLNICKI and CHARLOTTE CORDAY.

31.    Specifically, Charlotte Russe owns several U.S. federal trademark registrations for the mark CHARLOTTE RUSSE:  Registration No. 2416273 in Class 25 for clothing; Registration No. 2416270 in Class 26 for hair ornaments; Registration No. 2416269 in Class 14 for costume jewelry; Registration No. 2416268 in Class 18 for handbags and other related goods; Registration Nos. 2414477 and 1485692 in Class 42 for retail store services specializing in women's apparel and accessories; and Registration No. 2451427 in Class 3 for cosmetics.

32.    Moreover, Charlotte Russe began using the CHARLOTTE RUSSE mark before GMA's use of CHARLOTTE and thus its use is senior to GMA's use.

33.    Another third party with no relation to the parties hereto, Ehringer-Schwarz GMBH & Co. KG, owns the trademark registration for CHARLOTTE in International Class 14 for jewelry (Reg. No. 2117619, issued on December 2, 1997).  The Section 8&15 was filed for this mark on April 14, 2003 and acknowledged on July 12, 2003.

34.    Additionally, at the time GMA obtained its CHARLOTTE registrations, Charlotte Ford owned a registration for CHARLOTTE FORD in Class 25 for clothing.

35.    In addition, the owner of the mark CHARLOTTE TARANTOLA has prior rights, as compared to GMA, to the name CHARLOTTE based on common law use.

36.     Because of the name and geographic significance of "Charlotte" and the widespread use of "Charlotte" as a style designation in the apparel and jewelry industries, "Charlotte" has little or no significance as a source or association identifier and does not serve to identify a single apparel, handbag or jewelry source, much less serve to identify GMA as the exclusive source of "Charlotte" products.

37.     The apparel, handbags and jewelry produced by Ronson are high-end products that retail in different tier stores than GMA's products and are not competitive with GMA's products.

38.     The consumers purchasing Ronson's products are sophisticated, brand-conscious and used to discriminating between designer's names when purchasing merchandise in the fashion industry.  These consumers are not likely to be confused by the use of a designer's full name, even if it overlaps with or has similarities to another designer's name.

**GMA'S INTERFERENCE WITH RONSON'S BUSINESS --**
**THE CHARLOTTE SOLNICKI LAWSUIT**

39.     On April 20, 2007, GMA filed a lawsuit in the Southern District of New York entitled *GMA Accessories, Inc. v. Bop, LLC, Girlshop, Inc., Showroom Seven Studios, Inc., Jonathan Solnicki, Belmondo and Eminent, Inc.,* 07 CV 3219 (LTS)(DCF), based on the use of the CHARLOTTE SOLNICKI mark (the "Solnicki Matter").

40.     On September 26, 2007, GMA filed an amended complaint in the Solnicki Matter, adding the following retailers as defendants:  (i) Saks Fifth Avenue, Inc.; (ii) Intermix, Inc; (iii) Wink, NYC, Inc.; (iv) Lisa Kline, Inc.; (v) Jonathan Singer; and (vi) Lewis Tierney.

41.     A number of the retailers that have been sued by GMA in the Solnicki Matter also are currently customers of Ronson, including, but not limited to:  Bop, Belmondo, Eminent, Inc., Lisa Kline, Inc., Intermix, Inc., Wink, NYC, Inc. and Showroom Seven Studios, Inc.

42.     GMA is aware of these retailers' relationship with Ronson, and, under the guise of litigating the CHARLOTTE SOLNICKI mark, GMA has caused the court in that matter to issue injunctions on default and on consent with respect to some of the parties thereto that are overbroad, restricting retailers from selling not only the CHARLOTTE SOLNICKI merchandise at issue in that case, but also, under GMA's interpretation, all products bearing the CHARLOTTE mark in any form, including CHARLOTTE RONSON.  GMA takes this position despite the fact that Ronson is not a party to the Solnicki Matter and has not received any notice of the proceedings in that case.

43.     The use of the Solnicki Matter to effectively preclude Ronson's retailers from doing business with Ronson is an intentional interference with Ronson's business relationships, using unfair and improper means, and has resulted in injury to Ronson's business relationship with those retailers.

44.     In addition, GMA is knowingly and intentionally interfering with Ronson's business relations by threatening to sue and/or suing retailers who sell both CHARLOTTE SOLNICKI and CHARLOTTE RONSON merchandise and by using the injunctions in the Solnicki Matter in an attempt to scare and intimidate Ronson's retailers and injure Ronson's business and reputation.  That suit and threatened suits are objectively and subjectively baseless and interposed by GMA with bad faith and the intent to directly injure and harass Ronson's and others' business relationships through the use of governmental process as an anticompetitive weapon.  Ronson has been injured by GMA's actions.

45.     GMA has a history of attempting to misuse injunctions to intimidate parties to whom they do not apply.  In *GMA Accessories, Inc. v. Positive Impressions, Inc.*, 181 F.3d 82 (2d Cir. 1999), the United States Court of Appeals for the Second Circuit affirmed a decision of the United States District Court for the Southern District of New York vacating a preliminary injunction awarded GMA because of GMA's misuse of that injunction by sending it to 2,350 of the defendant's customers in an effort to coerce them to comply with an injunction that did not apply to them.

## FIRST CLAIM FOR RELIEF
## (NON-INFRINGEMENT)

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 above as if fully set forth herein.

47.     Because Ronson's apparel, handbags and jewelry are so clearly and prominently marked with the famous CHARLOTTE RONSON mark, confusion on the part of potential purchasers as to the source, origin or sponsorship of the CHARLOTTE RONSON products is not likely.

48.     Accordingly, the manufacture, marketing and/or sale by Ronson, its retailers, or other customers, of CHARLOTTE RONSON products is not likely to, and does not, cause confusion as to the source of its products and does not constitute an infringement of the trademark rights of GMA or the GMA CHARLOTTE Marks.

49.     GMA has asserted, directly and indirectly, that CHARLOTTE RONSON branded products infringe the GMA CHARLOTTE Marks.  GMA's actions in filing three oppositions against Ronson, suing Ronson's distributors and retailers and amending its Complaint in the Solnicki Matter to add more of Ronson's distributors and retailers, and insisting that the

injunctions entered into in that matter applies to CHARLOTTE RONSON merchandise illustrate that Ronson and its customers have a reasonable apprehension of being sued by GMA for trademark infringement and a justiciable controversy exists.

50.    The rights of the parties are dependent upon the facts and application of law thereto.

51.    Ronson is being damaged by the continued uncertainty created by GMA with respect to the legitimate use of Ronson's trademarks.

52.    Accordingly, Ronson is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the manufacture, marketing, offer for sale and/or sale of the CHARLOTTE RONSON merchandise by Ronson and Ronson's customers does not infringe GMA's trademark rights or the GMA CHARLOTTE Marks.

## SECOND CLAIM FOR RELIEF
### (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON TRADEMARK MISUSE)

53.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 52 above as if fully set forth herein.

54.    The GMA CHARLOTTE Marks lack significance as single source identifiers. Nevertheless, GMA has continued to sue and threaten to sue companies who use the word CHARLOTTE in connection with other words and continues to sue and threaten to sue retailers for selling said goods.  That suits and threatened suits are objectively and subjectively baseless and interposed by GMA with bad faith and the intent to directly injure and harass Ronson's and others' business relationships through the use of governmental process as an anticompetitive weapon.  As a result, Ronson has been injured by GMA's actions.

55.     Accordingly, Ronson seeks an order, pursuant to 15 U.S.C. §1119, directing

cancellation of the federal registrations of the GMA CHARLOTTE Marks.

### THIRD CLAIM FOR RELIEF
### (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)

56.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55

above as if fully set forth herein.

57.     In GMA's 8&15 Declarations, trademark applications and Statements of Use, as

filed with the U.S. Patent and Trademark Office, GMA declared that it was aware "that willful

false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C.

Section 1001, and that such willful false statements and the like may jeopardize the validity of

this document" and stated unequivocally that "all statements made of his/her own knowledge are

true and that all statements made on information and belief are believed to be true."

58.     GMA, as of the dates of its use-based applications, Statements of Use and/or the

Section 8&15 Declarations for the various CHARLOTTE Marks, was not using the marks in

connection with all the goods listed in the applications/registrations, despite its sworn and

material statements to the contrary.  Moreover, the dates of first use set forth in the applications

for the GMA CHARLOTTE Marks are fraudulent.

59.     GMA knew that its representations were false when made and intended that the

U.S. Patent and Trademark Office would rely on its statements to issue its registrations.  The

U.S. Patent and Trademark Office reasonably relied on GMA's statements in issuing the

CHARLOTTE registrations to GMA, causing harm to Ronson and others.

60.     The aforesaid acts of GMA constitute fraud on the U.S. Patent and Trademark

Office.  Accordingly, Ronson seeks an order from the Court directing cancellation of the federal

registrations of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. §1119 and civil damages

pursuant to 15 U.S.C. §1120.

## FOURTH CLAIM FOR RELIEF
## (CANCELLATION OF THE GMA CHARLOTTE MARKS BASED ON FRAUD)

61.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 60

above as if fully set forth herein.

62.     GMA has sued many of Ronson's retailers claiming that their use of

CHARLOTTE SOLNICKI infringes upon the GMA CHARLOTTE Marks.

63.     As stated above, Charlotte Russe, Charlotte Tarantola and Charlotte Ford, among

others, used marks containing "Charlotte" prior to GMA's use of CHARLOTTE.

64.     GMA knew, or should have known, of the existence of these prior uses and

contends now that they are likely to cause confusion.

65.     As part of its applications which led to the CHARLOTTE Marks Registrations,

GMA swore to the U.S. Patent and Trademark Office that no one else had the right to use a mark

that was likely to cause confusion with its applied-for marks.

66.     GMA knew that this statement of material fact was false when made and intended

that the U.S. Patent and Trademark Office would rely on its statement to issue its registrations.

The U.S. Patent and Trademark Office reasonably relied on GMA's statement in issuing the

CHARLOTTE registrations to GMA, causing harm to Ronson and others.

67.     The aforesaid acts of GMA constitute fraud on the U.S. Patent and Trademark

Office.  Accordingly, Ronson seeks an order from the Court directing cancellation of the federal

registrations of the GMA CHARLOTTE Marks pursuant to 15 U.S.C. §1119 and civil damages

pursuant to 15 U.S.C. §1120.

## FIFTH CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS)

68.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 above as if fully set forth herein.

69.    GMA is knowingly and intentionally interfering with Ronson's business relations by contacting retailers who sell both CHARLOTTE SOLNICKI product and CHARLOTTE RONSON product and using the Solnicki matter to scare and intimidate Ronson's retailers in an obvious attempt to induce those retailers not to do business with Ronson and to injure Ronson's business and reputation.

70.    GMA's use of the Solnicki Matter to indirectly affect Ronson's business is wrongful and constitutes a bad faith attempt to harass Ronson's retailers, vendors and customers and to interfere with Ronson's ability to conduct business with those entities.

71.    Ronson has been injured by GMA's actions.

72.    Accordingly, Ronson seeks a judgment enjoining GMA from contacting, threatening, harassing and/or suing Ronson's customers with false accusations of trademark infringement based on the GMA CHARLOTTE Marks.

73.    By reason of the foregoing, Ronson has been damaged in an amount to be determined at trial, together with punitive damages.

## SIXTH CLAIM FOR RELIEF
## (COMMON LAW UNFAIR COMPETITION)

74.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 73 above as if fully set forth herein.

75.    By contacting retailers who sell CHARLOTTE RONSON and CHARLOTTE SOLNICKI merchandise and using the Solnicki matter to scare and intimidate Ronson's retailers,

GMA has knowingly and intentionally misused its trademarks, unfairly competed with Ronson and violated the common law unfair competition law of the State of New York.

76.     Accordingly, Ronson seeks a judgment enjoining GMA from unfairly competing with Ronson, threatening Ronson and/or harassing Ronson's customers with threats of trademark infringement action based on their offer for sale and/or sale of CHARLOTTE RONSON merchandise.

77.     By reason of the foregoing, Ronson has been damaged in an amount to be determined at trial, together with punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against GMA, as follows:

A.     On the First Cause of Action, a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the manufacture, marketing, offer for sale and/or sale of products or services using the CHARLOTTE RONSON marks by Ronson and Ronson's customers does not infringe GMA's trademark rights and/or the GMA CHARLOTTE Marks;

B.     On the Second Cause of Action, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks, based on trademark misuse;

C.     On the Third Cause of Action, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks, based on fraud;

D.    On the Fourth Cause of Action, directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the GMA CHARLOTTE Marks and to deny GMA's trademark applications for the GMA CHARLOTTE Marks, based on fraud;

E.    On the Fifth Cause of Action for tortious interference with business relations, permanently enjoining GMA from contacting Ronson's customers or threatening Ronson's customers with trademark infringement lawsuits based on their sale of CHARLOTTE RONSON products and awarding Ronson damages in an amount to be determined at trial, together with punitive damages;

F.    On the Sixth Cause of Action for common law unfair competition, permanently enjoining GMA from misusing their trademarks, unfairly competing with Ronson, threatening Ronson and/or harassing Ronson's customers with threats of trademark infringement action based on their offer for sale and/or sale of CHARLOTTE RONSON merchandise and awarding Ronson damages in an amount to be determined at trial, together with punitive damages;

G.    An award of damages to Plaintiff as a consequence of Defendant's acts of false declarations and/or fraud in obtaining and maintaining trademark registrations in an amount to be determined at trial or such other sum as this Court shall decide;

H.    Awarding Ronson reasonable attorney's fees and costs of bringing this Action; and

I.    Granting Plaintiff such other, further and different relief as the nature of the case

may require or as may be determined to be just, equitable, and proper by this Court.

## JURY DEMAND

Ronson hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
      October 26, 2007

                        Respectfully submitted,

                        Ira S. Sacks
                        Mary L. Grieco
                        Safia A. Anand
                        Dreier LLP
                        499 Park Avenue
                        New York, NY 10022
                        (212) 328-6100

                        Lisa T. Simpson
                        Orrick, Herrington & Sutcliffe LLP
                        666 Fifth Avenue
                        New York, NY 10103
                        (212) 506-5100

                        *Attorneys for Plaintiff*

# EXHIBIT  A

```
THIS DISPOSITION
IS NOT CITABLE AS PRECEDENT
OF THE T.T.A.B.
```

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451


Lykos

Mailed:  November 6, 2006

Opposition No. 91167353
Opposition No. 91168148
Opposition No. 91172117[1]

GMA Accessories, Inc.

v.

Sanei Charlotte Ronson,
LLC, joined as party
defendant and C. Ronson,
Inc.[2]

(as consolidated)


Before Hohein, Holtzman, and Zervas, Administrative
Trademark Judges.

By the Board:

    This case now comes up for consideration of opposer's

motion (filed June 22, 2006) for summary judgment in

---

[1]  The parties' stipulation (filed August 30, 2006) to
consolidate Opposition No. 91167353 with Opposition Nos. 91167353
and 91168148 is hereby granted.  By this order, Opposition No.
91172117 has been added to these consolidated proceedings.  *See*
TBMP § 511 (2d ed. rev. 2004).  All future communications with
the Board should be captioned in the above manner.

[2]  According to the records of the Assignment Branch of the
Trademark Office, the applications which are the subject of this
consolidated opposition proceeding were assigned to Sanei
Charlotte Ronson, LLC.  As such, Sanei Charlotte Ronson, LLC
has been joined in this proceeding as a defendant in order to
facilitate discovery.  *See* TBMP § 512.01 (2d ed. rev. 2004).
Evidence of the assignments was recorded at Reel 3290, Frame 0027
of the Assignment Branch on April 14, 2006.

Opposition Nos. 91167353 and 91168148.[3]   The motion is
fully briefed.[4]

By way of background, on October 28, 2004, applicant
filed two separate applications to register the mark
CHARLOTTE RONSON for "jewelry, namely, necklaces, bracelets,
earrings, rings, and pins, and watches" in International
Class 14, and "clothing, namely, tops, pants, skirts,
dresses, hats, caps, jackets, coats, headwear, underwear,
sleepwear, and footwear" International Class 25.[5]  Both
applications are based on an alleged bona fide intention to
use the mark in commerce.

Opposer has opposed registration on the ground that
applicant's applied-for marks so resemble opposer's
previously used and registered marks that they are likely to
cause confusion, mistake, or deceive prospective consumers
under Section 2(d) of the Lanham Act.  In the notices of
opposition, opposer has pleaded ownership of the following
registered marks:

> The mark CHARLOTTE for "hair accessories, namely,
> hair clips, scrunchees, ribbons and braids" in
> International Class 26;[6]

---

[3]   The parties' stipulation (filed July 6, 2006) to extend
applicant's time to file a responsive brief to opposer's motion
for summary judgment is granted.  Applicant's responsive brief
filed on August 4, 2006 is therefore timely, and has been given
full consideration by the Board.

[4]   The Board has exercised its discretion to consider opposer's
reply brief.  See Trademark Rule 2.127(a).

[5] Application Serial Nos. 78507236 and 78507242.

the mark CHARLOTTE for "sacks and bags, namely, handbags made of textiles and beads" in International Class 18;[7]

the mark CHARLOTTE for "clothing, footwear and headgear, namely, hats, scarves, gloves and socks" in International Class 26;[8]

the mark CHARLOTTE for "sunglasses" in International Class 9;[9]

the mark CHARLOTTE AND FRIENDS for "clothing, footwear and headgear, namely, hats, scarves, gloves and socks" in International Class 9;[10]

the mark CHARLOTTE AND FRIENDS for "sacks and bags, namely, namely, handbags made of textiles and beads" in International Class 18;[11]

the mark CHARLOTTE AND FRIENDS for "toys, namely plush animals" in International Class 28;[12]

---

[6] Registration No. 2216405, registered on January 5, 1999, alleging November 1996 as the date of first use anywhere and in commerce; Section 8 and 15 affidavits accepted and acknowledged.

[7] Registration No. 2217341, registered on January 12, 1999, alleging November 1996 as the date of first use anywhere and in commerce; Section 8 and 15 affidavits accepted and acknowledged.

[8] Registration No. 2535454, registered on February 5, 2002, alleging November 15, 1996 as the date of first use anywhere and in commerce.

[9] Registration No. 2561025, registered on April 16, 2002, alleging November 15, 1996 as the date of first use anywhere and in commerce.

[10] Registration No. 2412360, registered on December 12, 2000, alleging November 15, 1996 as the date of first use anywhere and in commerce; Section 8 and 15 affidavits accepted and acknowledged.

[11] Registration No. 2412361, registered on December 12, 2000, alleging November 15, 1996 as the date of first use anywhere and in commerce.

[12] Registration No. 2444120, registered on April 17, 2001, alleging November 15, 1996 as the date of first use anywhere and in commerce.

the mark CHARLOTTE AND FRIENDS for "cosmetics,
namely, perfume, lip gloss, and hair lotions" in
International Class 3;[13] and

the mark CHARLOTTE AND FRIENDS for "sunglasses" in
International Class 9.[14]

In each answer, applicant denied the salient
allegations and asserted various affirmative defenses.
We now review the parties' respective arguments.

In its motion for summary judgment, opposer argues that
opposer's and applicant's marks are similar insofar as each
mark includes the name CHARLOTTE, and that the goods as
identified in the parties' respective applications and
registrations are related.[15]

In support of its motion for summary judgment, opposer

---

[13]  Registration No. 2412362, registered on December 12, 2000,
alleging November 15, 1996 as the date of first use anywhere and
in commerce.

[14]  Registration No. 2682145, registered on February 4, 2003,
alleging November 15, 1996 as the date of first use anywhere and
in commerce.

[15]  Opposer also argues in its motion for summary judgment that
applicant is attempting to pass off purportedly counterfeited
products as opposer's goods.  Aside from the fact that opposer
has not pleaded such a claim and therefore may not obtain summary
judgment with respect thereto, the Board in any event does not
have jurisdiction to decide claims regarding counterfeited goods
under the Lanham Act.  As such, opposer's arguments regarding
such a claim have been given no further consideration.

has submitted the declaration of Mr. John P. Bostany, counsel for opposer, with copies of opposer's pleaded registrations showing that opposer is the owner and that the registrations are subsisting, and copies of advertisements showing use of opposer's marks attached as exhibits thereto.[16]

In its responsive brief, applicant contends that genuine issues of material fact exist regarding the similarity of the parties' marks; that in the fashion industry, it is common for designers to have the same first or last name as other designers; and that the term CHARLOTTE is in a crowded field of marks because numerous third-party registrations for marks incorporating the term CHARLOTTE coexist on the Principal Register for the same or highly related goods.

In support of its position, applicant has submitted the declaration of Ms. Charlotte Ronson, a fashion designer who markets her products under her name, stating that the trademark CHARLOTTE RONSON is well-known in the fashion industry; that she does not use her first name Charlotte

---

[16] The Board also notes that opposer has enclosed portions of the record (the pleadings in Opposition Nos. 91167353 and 91168148) in this proceeding as exhibits in support of its motion for summary judgment. Opposer is reminded that these papers, by their very nature, already form part of the record in this proceeding. Accordingly, opposer is requested to refrain from attaching portions of the record to future filings.

separately from her last name as a trademark in marketing her goods; that it is common in the fashion industry for designers to have the same first or last name as other designers and use those names as trademarks; and that she is also aware of other fashion designers who use the name Charlotte in marketing their products (for example, Charlotte Russe). Attached as exhibits to Ms. Ronson's declaration are copies of applicant's customer phone list and copies of advertisements using the mark CHARLOTTE RONSON. Applicant has also submitted the declaration of Ms. Mary L.Grieco, counsel for applicant, with copies of third-party registrations for marks that share a common name in the fashion industry (e.g., GIORGIO BEVERLY HILLS, GIORGIO ARMANI, GIORGIO COSANI; RALPH LAUREN, LAUREN LEE, LAUREN GUINOT) and copies of third-party registrations for marks incorporating the name CHARLOTTE for related goods (e.g., CHARLOTTE RUSSE).

In reply, opposer argues that because during *ex parte* examination the examining attorney initially refused registration of one of applicant's marks under Section 2(d) of the Trademark Act on the basis of two of opposer's pleaded registrations, summary judgment should be granted in opposer's favor.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986).

Upon careful consideration of the arguments and evidence presented by the parties, and drawing all inferences with respect to the motion in favor of applicant as the nonmoving party, we find that opposer has failed to demonstrate the absence of a genuine issue of material facts for trial. At a minimum, genuine issues of material fact exist as to the similarity or dissimilarity of the commercial impressions of the marks at issue and the strength of opposer's pleaded marks and applicant's applied-for marks.[17] In addition, applicant's evidence of third-party registrations that share a common name in the fashion

---

[17] Even if we disregard the third-party registrations submitted by applicant incorporating the term CHARLOTTE and which refer to a geographic designation (e.g., registrations for the marks CHARLOTTE STING and UNC CHARLOTTE), and the registrations which have been cancelled or are currently subject to an *inter partes* case, a sufficient number of third party registrations remain to create a genuine issue of material fact regarding the strength of the name CHARLOTTE in relation to the parties' goods.

industry raises a genuine issue of material fact regarding

the perception of prospective consumers of applicant's and

opposer's marks.

Lastly, we reject opposer's argument that the Board should defer to the examining attorney's initial refusal of one of applicant's applications under Section 2(d). The examining attorney's determination made during *ex parte* examination has no bearing in this Board *inter partes* case.

Accordingly, opposer's motion for summary judgment is denied.[18]

Proceedings herein are resumed and trial dates, including the period for discovery, are reset as follows:[19]

THE PERIOD FOR DISCOVERY TO CLOSE:      2/16/07

30-day testimony period for party in
position of plaintiff to close:        5/17/07

30-day testimony period for party in
position of defendant to close:        7/16/07

15-day rebuttal testimony period for
plaintiff to close:                    8/30/07

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served

---

[18] The parties should note that all evidence submitted in support of and in opposition to the motion for summary judgment is of record only for consideration of said motion. Any such evidence to be considered in final hearing must be properly introduced in evidence during the appropriate trial periods. *See Levi Strauss & Co. v. Josephs Sportswear Inc.,* 28 USPQ2d 1464 (TTAB 1993); and *Pet Inc. v. Bassetti,* 219 USPQ 911 (TTAB 1983).

[19] Under standard Board practice, the schedule for these consolidated cases is reset to reflect the schedule of the most recently filed case.

on the adverse party within thirty days after completion of the taking of testimony.   Trademark Rule 2.125.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b).

An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.