UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                            :

SANEI CHARLOTTE RONSON LLC,      :

                                            :     Civil Action No.

               Plaintiff,       :     07 CV 9578 (CM)

                                            :

              -against-       :

                                            :

                                            :

GMA ACCESSORIES, INC.,          :

                                            :

                    Defendant.     :
-------------------------------------------------------------x

**PLAINTIFF SANEI CHARLOTTE RONSON LLC'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT GMA ACCESSORIES, INC.'S MOTION TO DISMISS**

Ira S. Sacks
Mary L. Grieco
Safia A. Anand
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

Lisa T. Simpson
ORRICK, HERRINGTON &
SUTCLIFFE LLP
666 5th Avenue
New York, NY 10103
(212) 506-5100

Attorneys for Plaintiff

## **TABLE OF CONTENTS**

**Page**

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ................................................................................................................... 8

I.      RONSON'S REQUEST FOR DECLARATORY RELIEF IS PROPER ......................... 10

        A.      Ronson Has Met The Article III Declaratory Judgment Standard ......................... 10

        B.      Threats Against Customers Alone Are Sufficient For Article III Purposes ........... 12

        C.      The Opposition Proceeding Commenced by GMA Does Not Insulate
                GMA From District Court Litigation ................................................................... 13

II.     THIS COURT HAS SUBJECT MATTER JURISDICTION TO CANCEL .................... 15

III.    RONSON COMPLIED WITH RULE 9(B) .................................................................. 16

IV.     RONSON'S TRADEMARK MISUSE CLAIM SHOULD NOT BE DISMISSED ....... 19

V.      RONSON'S UNFAIR COMPETITION CLAIM IS PROPER ...................................... 21

VI.     RONSON'S TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS
        RELATIONS CLAIM SHOULD NOT BE DISMISSED ............................................... 23

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ......................................................................................17

*Airship Indus. (UK) Ltd. v. Goodyear Tire & Rubber Co.*,
  643 F.Supp. 754 (S.D.N.Y. 1986) ..........................................................................12

*Albright v. Oliver*,
  510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) .........................................8

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .....................................................................................9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  999 F.Supp. 725 (S.D.N.Y. 1998) .........................................................................16

*Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*,
  No. 06 Civ. 2652, 2006 WL 2089926 (S.D.N.Y. July 21, 2006) ..............11, 15, 16

*Bayou Hedge Fund Litig.*,
  Nos. 06-MDL-1755 and 06-CV-2943, 2007 WL 2319127 (S.D.N.Y. July 31, 2007) ............9

*Bell Atlantic Corp. v. Twombly*,
  127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................................................8, 9

*Cohen v. Koenig*,
  25 F.3d 1168 (2d Cir.1994) .....................................................................................9

*Conopco, Inc. v. Campbell Soup Co.*,
  95 F.3d 187 (2d Cir. 1996) .....................................................................................20

*Cooper v. Pate*,
  378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) .........................................8

*Druyan v. Jagger*,
  508 F.Supp.2d 228 (S.D.N.Y. 2007) .......................................................................9

*Frederick Goldman, Inc. v. West*,
  No. 06 Civ. 3413, 2007 WL 1989291 (S.D.N.Y. July 6, 2007) .......................10, 11

*Frink America, Inc. v. Champion Road Machinery Ltd.*,
  216 F.3d 1072, No. 99-9034, 2000 WL 754945 (2d Cir. May 24, 2000)................22

*Frink America, Inc. v. Champion Road Machinery Ltd*,
  62 F.Supp.2d 679 (N.D.N.Y. 1999) .......................................................................22

*GMA Accessories, Inc. v. Bop, LLC*,
  No. 07 CV 3219 (LTS)(DCF) ..................................................................................7

*GMA Accessories, Inc. v. Croscill, Inc.*,
  No. 06 Civ. 6236, 2007 WL 766294 (S.D.N.Y. March 13, 2007) .........................5, 20, 21, 22

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
  157 F. Supp. 2d 234 (S.D.N.Y. 2000).....................................................................18

*GMA Accessories, Inc. v. Positive Impressions, Inc.*,
  181 F.3d 82 (2d Cir. 1999)........................................................................................8

*Goya Foods, Inc. v. Tropicana Prods.*,
  Inc., 846 F.2d 848 (2d Cir. 1988).............................................................................14

*H.L Hayden Co. v. Siemens Med. Sys., Inc.*,
  879 F.2d 1005 (2d Cir. 1989) ...................................................................................22

*Iqbal v. Hasty*,
  490 F.3d 143 (2d Cir. 2007) .......................................................................................9

*Joao v. Cenuco, Inc.*,
  376 F.Supp.2d 380 (S.D.N.Y. 2005) ..........................................................................8

*Juno Online Services, L.P., v. Juno Lighting, Inc.*,
  979 F.Supp. 684 (N.D. Ill. 1997)..............................................................................20

*Larami Corp. v. Amron*,
  No. 92 Civ. 7323, 1994 WL 369251 (S.D.N.Y. July 13, 1994) ........................11, 12

*LeBlanc v. Cleveland*,
  198 F.3d 353 (2d Cir.1999).........................................................................................9

*Leighton Techs. LLC v. Oberthur Card Systems, S.A.*,
  No. 04 Civ. 2496, 2007 WL 2230157 (S.D.N.Y. July 11, 2007) ...............................9

*Lewis Invisible Stitch Mach. Co. v. Columbia Blindstitch Mach. Mfg. Corp.*,
  22 F.Supp. 705 (S.D.N.Y. 1937) ..............................................................................22

*Linzer Prods. Corp. v. Sekar*,
  499 F.Supp.2d 540 (S.D.N.Y. 2007).........................................................................11

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941) ..................................................................................................10

iii

*McGuire v. Regents of Univ. of Mi.*,
    No. 2:99CV1231, 2000 WL 1459435 (S.D. Ohio Sept. 21, 2000).........................................20

*MedImmune, Inc. v. Genentech, Inc.*,
    127 S.Ct. 764 (2007) ...................................................................................................10, 11

*Moog Controls, Inc. v. Moog, Inc.*,
    923 F.Supp. 427 (W.D.N.Y. 1996) .........................................................................................10

*Moyer v. United States*,
    190 F.3d 1314 (Fed.Cir.1999) ...................................................................................................9

*NeilMed Prods. Inc. v. Med-Systems Inc.*,
    81 U.S.P.Q.2d 1598 (N.D.Cal. 2007).......................................................................................15

*Nippon Elec. Glass Co., Ltd. v. Sheldon*,
    489 F.Supp. 119 (S.D.N.Y. 1980) .......................................................................................12, 13

*Pac. Health Advantage v. Cap Gemini Ernst & Young*,
    No. 07-CV-4725, 2007 WL 2619052 (S.D.N.Y. Sept. 5, 2007) .........................................8, 9

*Patane v. Clark*,
    No. 06-3446-CV, 2007 WL 4179838 (2d Cir. Nov. 28, 2007) ...............................................9

*Pioneer Comm. Funding Corp. v. United Airlines, Inc.*,
    122 B.R. 871 (S.D.N.Y. 1991) .................................................................................................21

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36 (1961)................................13

*Price-Hollister Co. v. Warford Corp.*,
    18 F. Supp. 129 (S.D.N.Y. 1926).............................................................................................22

*Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.*
    No. 95 Civ. 2794, 1996 WL 50227 (S.D.N.Y. Feb. 8, 1996)............................................14, 15

*Reynolds v. Army and Air Force Exch. Serv.*,
    846 F.2d 746 (Fed. Cir. 1988) ...................................................................................................9

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir.2007) .................................................................................................11

*Sony Elecs., Inc. v. Guardian Media Techs.*,
    Ltd., 497 F.3d 1271 (Fed. Cir. 2007).......................................................................................11

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) .....................................................................................................13

*Topp-Cola Co. v. Coca-Cola Co.*,
    314 F.2d 124 (2d Cir. 1963).............................................................................14, 15

*Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd.*,
    No. 02 Civ. 1151, 2003 WL 42001 (S.D.N.Y. Jan. 6, 2003)....................................1

*Whitney Information Network, Inc. v. Gagnon*,
    353 F.Supp.2d 1208 (M.D. Fla. 2005) ...................................................................19

## State Cases

*Downes v. Culbertson*,
    153 Misc. 14, 275 N.Y.S. 233 (N.Y. Sup. Ct. 1934)..............................................22

## Trademark Trial and Appeal Board Cases

*GMA Accessories, Inc. v. Sanei Charlotte Ronson, LLC*,
    Opposition No. 91167353 (TTAB Nov. 6, 2006).....................................................6

## U.S. Court of Customs and Appeals Cases

*E.I. DuPont de Nemours & Co.*,
    476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973) ...................................................13

## Federal Statutes

15 U.S.C. §1120 ................................................................................................................18

15 U.S.C. § 1057 (b) ........................................................................................................19

15 U.S.C. § 1064 ..............................................................................................................18

15 U.S.C. § 1119 ..........................................................................................15, 18, 19, 20, 21

15 U.S.C. § 1120 ..............................................................................................................18

28 U.S.C. 1367 .................................................................................................................23

## Code of Federal Regulations

37 CFR § 2.111(b)............................................................................................................18

**<u>Federal Rules</u>**

Fed. R. Civ. P. 12(b)(1) ........................................................................................8, 9

Fed. R. Civ. P. 12(b)(6) ..........................................................................................8

Fed. R. Civ. P. 9(b)....................................................................................8, 16, 17

**<u>Trademark Trial and Appeal Board<br>Manual of Procedure</u>**

§ 303.01 ...................................................................................................................18

§ 309.03(b) ..............................................................................................................18

**<u>Secondary Sources</u>**

104 N.Y. Jur. 2d Trade Reg. § 135 (2007) ...........................................................21

104 N.Y. Jur. 2d Trade Reg. § 271 (2007) ...........................................................22

104 N.Y. Jur. 2d Trade Reg. § 119 (1992) ...........................................................22

**PLAINTIFF SANEI CHARLOTTE RONSON LLC'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT GMA ACCESSORIES, INC.'S MOTION TO DISMISS**

Plaintiff Sanei Charlotte Ronson LLC ("Ronson"), respectfully submits this memorandum

of law in opposition to Defendant GMA Accessories, Inc.'s ("GMA") motion to dismiss pursuant

to Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure (the "Motion").[1]  In

this action, Ronson seeks a declaration that its use of the personal name of designer Charlotte

Ronson, *i.e.,* CHARLOTTE RONSON, as a trademark to sell high-end fashion goods does not

infringe any rights held by GMA in the mark CHARLOTTE.  Ronson further seeks cancellation

of GMA's trademark registrations due to GMA's flagrant acts of fraud on the US Patent and

Trademark Office ("USPTO") and bad faith litigation tactics, as well as an injunction and

damages for GMA's persistent interference with Ronson's business and unfair competition.

GMA asserts in its Motion that there is no case or controversy between the parties and essentially

argues that there is no judicial forum in which Ronson can litigate its claims against GMA.

GMA's Motion is baseless in all respects and should be denied in its entirety.

First, there plainly is a case or controversy between Ronson and GMA.  Not only has

GMA sent a cease and desist letter to Ronson, GMA has engaged Ronson in a vigorously fought

Opposition proceeding before the Trademark Trial and Appeal Board in which GMA has

asserted that Ronson's use of its CHARLOTTE RONSON Marks infringes GMA's

CHARLOTTE Marks and that Ronson should be enjoined from using Charlotte Ronson's full

name as a trademark.  In addition, GMA has threatened Ronson and its customers with

---

[1]  GMA's moving papers are replete with references to facts outside the complaint.  As this
Court is aware, this Court must ignore all such references in connection with those portions of
the Motion under Rule 12(b)(6).  *See, e.g.*, *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.,
Ltd.*, No. 02 Civ. 1151, 2003 WL 42001, at *4 (S.D.N.Y. Jan. 6, 2003).

infringement suits and has actually sued a number of Ronson's customers. These facts plainly establish a case or controversy between the parties.

Moreover, this Court has subject matter jurisdiction to resolve Ronson's cancellation claim as a result of its jurisdiction to hear the declaratory judgment claim. Additionally, GMA has committed fraud on the USPTO in numerous respects in connection with the issuance and maintenance of the registered marks at issue in this suit (the "GMA CHARLOTTE Marks"). Ronson's fraud claims, which seek cancellation of those marks, are amply pled under Rule 9(b). GMA has full notice of the claims except for facts that are exclusively within GMA's possession.

Further, contrary to GMA's argument, Ronson is not required to allege monetary injury to support its cancellation claims. In an action to cancel a trademark registration, a plaintiff need only allege that it has been injured by the existence of the registration. Ronson has clearly alleged that it is being damaged by GMA's trademark registrations because GMA is using those registrations to threaten Ronson and its customers and to try to prevent Ronson from engaging in its legitimate business.

Finally, GMA's attacks on Ronson's trademark misuse, unfair competition and tortious interference claims are equally without merit. Ronson has pled all of the required elements of those causes of action.

## STATEMENT OF FACTS

The following facts are based on the well-pled allegations of the Complaint, as required on GMA's Motion. The facts are more fully set forth in the Complaint and they will not all be repeated herein.[2]

### The Charlotte Ronson Brand

In September 1999, Charlotte Ronson (the individual, hereinafter defined as "Ms. Ronson") began selling her original clothing designs using the mark C. RONSON. In May 2002, Ms. Ronson opened a clothing boutique in downtown New York City known as C. RONSON. In approximately February 2005, Ms. Ronson began to use her full name, CHARLOTTE RONSON, as a trademark on apparel, shoes, bags and accessories, operating as C. Ronson, Inc. ("C. Ronson"). Complaint ¶ 6.[3]

The CHARLOTTE RONSON brand is well-known in the fashion industry. The CHARLOTTE RONSON line has been sold in numerous retail stores in the United States and internationally, including in Bloomingdales and Nordstrom's, and online at Shopbop. Complaint ¶ 11. The brand also has received a great deal of unsolicited press coverage in numerous renowned publications, including Vogue, Teen Vogue, Jane, Maxim, InStyle, Cosmopolitan, the New York Post and People. In addition, CHARLOTTE RONSON branded clothing and

---

[2]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

[3]  CHARLOTTE RONSON merchandise was sold by C. Ronson until 2006. On March 2, 2006, C. Ronson, Inc. assigned its rights to the CHARLOTTE RONSON Marks, among others, to Sanei Charlotte Ronson, LLC (defined above as "Ronson"), a joint venture in which the individual Charlotte Ronson holds a significant equity interest. The assignments of the pending trademark applications were recorded with the USPTO on April 14, 2006. CHARLOTTE RONSON merchandise is now sold by Ronson. Complaint ¶ 10.

accessories are worn by numerous well-known celebrities, including Janet Jackson, Jennifer

Lopez, Kate Moss, Gisele Bündchen, Lindsay Lohan, Paris Hilton, Jessica Simpson, Jennifer

Love Hewitt and MTV's Su Chin Pak and has been mentioned in an infamous "shout-out" in a

Jay-Z song.  Complaint ¶¶ 12-13.

   As a result of the extensive and continuous use of the CHARLOTTE RONSON Marks,

Ronson has developed substantial good will among its customers and the CHARLOTTE

RONSON Marks have acquired secondary meaning in that they have come to be associated in the

minds of the public with Ronson and to signify the high-end, high quality products offered by

Ronson.  Complaint ¶ 14.  To further protect its rights in the CHARLOTTE RONSON Marks,

Ronson filed three applications to register the mark with the USPTO (none of which have issued

yet, due to the opposition proceedings filed by GMA).  Complaint ¶¶ 7-9, 24; Sack Decl. ¶¶ 3, 7.

**GMA's Alleged Use Of The Mark "Charlotte"**

   GMA is, according to its website (located at www.capelli-ny.com), in the business of

selling fashion accessories and novelty items, such as hair accessories, socks, leg warmers,

sandals, flip flops, slippers, plush toys and pet accessories.  Complaint ¶ 16.  GMA has secured

numerous trademark registrations for CHARLOTTE.  Many of these registrations, if not all, were

obtained by fraud.  Specifically, in connection with securing those registrations, and as detailed

in the Complaint, GMA's counsel declared under oath (at several points in the registration

process) that GMA was using the mark at issue in connection with all the goods identified in

each of those applications as of the date claimed.  Complaint ¶ 21.  Specifically, GMA's counsel

made those sworn statements (1) when filing GMA's trademark applications based on use for the

GMA CHARLOTTE Marks; (2) when filing Statements of use with respect to GMA's intent-to-

use applications; and (3) when five years after securing its registrations, it filed the required

Section 8&15 Declarations, in which GMA swore to its continued use of the marks in order to keep its registrations from abandonment. GMA's sworn statements that it was using the GMA CHARLOTTE Marks on **all** the goods identified in those applications and registrations as of the dates claimed were false. Complaint ¶ 22. Further, GMA also falsely swore under oath in each of its trademark applications that it was unaware of anyone else with a right to use a mark that was likely to cause confusion with GMA's CHARLOTTE Marks. Complaint ¶ 23. This statement was sworn to despite GMA's knowledge of numerous other brands and style names in the fashion industry using the mark "Charlotte." Complaint ¶¶ 30-35.[4]

---

[4] "Charlotte" is a weak mark, at best, having little or no significance as a source identifier for any single apparel, hand bag, or jewelry source. Not only is "Charlotte" commonly used as a style designation in the apparel and jewelry industry -- Ronson is aware of at least 49 companies that use "Charlotte" as a style designation for their various fashion products -- several other designers use the name "Charlotte" as brands in connection with their apparel and accessories lines, including, but not limited to, CHARLOTTE RUSSE, CHARLOTTE TARANTOLA, CHARLOTTE SOLNICKI and CHARLOTTE CORDAY. Complaint ¶¶ 27-30. Several of these marks were in use prior to GMA's use of CHARLOTTE. Complaint ¶¶ 31-35. As Judge Lynch found in *GMA Accessories, Inc. v. Croscill, Inc.*, No. 06 Civ. 6236, 2007 WL 766294 (S.D.N.Y. March 13, 2007), when denying GMA's motion for summary judgment in another lawsuit based on GMA's CHARLOTTE Marks:

> GMA has presented no evidence regarding consumer recognition of the [CHARLOTTE] mark as indicating origin of the goods. A factfinder could reach differing conclusions, based on the limited record before the Court, as to whether the parties even utilize 'Charlotte' as a designator of origin, as opposed to simply as a style name, let alone whether the public recognizes it as such … Nor has GMA presented evidence that the mark is heavily advertised, or other evidence from which its prominence in the marketplace may be inferred …. Indeed, [GMA's] showing is sufficiently weak that this Court cannot fairly conclude that it is likely to prevail on the merits.

*Id.* at * 2-3. A true and correct copy of Judge Lynch's decision is attached to the Sacks Decl. as Ex. G.

**GMA's Threats of Litigation and Interference With Ronson's Business**

Ms. Ronson first became aware of GMA in February 2005 when GMA sent a cease and desist letter to C. Ronson, Inc. threatening that Ronson's failure to cease using the trademark CHARLOTTE RONSON would subject it to liability and damages, including attorneys' fees. Complaint ¶ 17, Sacks Decl., Ex. A. Later that year, on October 31, 2005, GMA filed an opposition to C. Ronson's application for the mark CHARLOTTE RONSON in Class 14 (Opposition No. 9167353). GMA followed with oppositions to C. Ronson's Class 25 application on December 20, 2005 (Opposition No. 91168148) and its Class 18 application on July 31, 2006 (Opposition No. 91172117). These oppositions have all been consolidated under Opposition No. 91167353 (the "Opposition") before the Trademark Trial and Appeal Board (the "TTAB"). Complaint ¶ 24.

The Opposition has been a contentious one. First, GMA moved for summary judgment arguing that the TTAB should refuse to register the CHARLOTTE RONSON Marks as a matter of law. On November 6, 2006, the TTAB denied GMA's motion for summary judgment, noting that numerous other brands in fashion share common personal names: "applicant's evidence of third-party registrations that share a common name in the fashion industry raises a genuine issue of material fact regarding the perception of prospective consumers of applicant's and opposer's marks." *See GMA Accessories, Inc. v. Sanei Charlotte Ronson, LLC*, Opposition No. 91167353 (TTAB Nov. 6, 2006). Complaint ¶ 25. A true and correct copy of this decision is attached to the Complaint as Ex. A and as Ex. D to the Sacks Decl.

Moreover, during the course of the Opposition, GMA has alleged that the sale of goods bearing the CHARLOTTE RONSON Marks infringes GMA's Marks – that is, that it will make it likely that consumers will not be able to distinguish between the marks. Sacks Decl. ¶ 9; Ex. E.

6

GMA has even asserted that Ronson should be enjoined from changing the brand of her line from C. Ronson to CHARLOTTE RONSON. Sacks Decl. ¶ 10; Ex. F.

While continuing its contentious litigation with Ronson in the TTAB, on April 20, 2007, GMA filed a lawsuit in the Southern District of New York entitled *GMA Accessories, Inc. v. Bop, LLC, Girlshop, Inc., Showroom Seven Studios, Inc., Jonathan Solnicki, Belmondo and Eminent, Inc.,* 07 CV 3219 (LTS)(DCF), based on the use of the CHARLOTTE SOLNICKI mark (the "Solnicki Matter"). Complaint ¶ 39.

On September 26, 2007, GMA filed a second amended complaint in the Solnicki Matter, adding the following retailers as defendants: (i) Saks Fifth Avenue, Inc.; (ii) Intermix, Inc; (iii) Wink, NYC, Inc.; (iv) Lisa Kline, Inc.; (v) Jonathan Singer; and (vi) Lewis Tierney. Complaint ¶ 40. Although this matter does not name Ronson as a party or on its face concern the CHARLOTTE RONSON Marks, a number of the retailers that have been sued by GMA in the Solnicki Matter also are currently customers of Ronson, including, but not limited to: Bop, Belmondo, Eminent, Inc., Lisa Kline, Inc., Intermix, Inc., Wink, NYC, Inc. and Showroom Seven Studios, Inc. Complaint ¶ 41.

GMA is aware of these retailers' relationships with Ronson and, under the guise of litigating claims against CHARLOTTE SOLNICKI branded products, GMA has caused the court in that matter to issue injunctions on default and on alleged consent restricting retailers from selling not only the CHARLOTTE SOLNICKI merchandise at issue in that case, but also, under GMA's interpretation, all products bearing the CHARLOTTE mark in any form, including CHARLOTTE RONSON products. Complaint ¶ 42.

In addition to its attempts to prevent the retailers who are actually a party to the Solnicki Matter from selling CHARLOTTE RONSON merchandise, GMA has taken the default

injunction in that matter and used it in an attempt to scare and intimidate <u>other</u> retailers and customers of Ronson.  GMA's most recent wave of cease and desist letters included Blue Fly, Inc., another of Ronson's customers.  It is likely that these customers will soon be sued by GMA as well.  Sacks Decl. ¶ 17; Sacks Decl., Ex. H.[5]

As we shall now further demonstrate, the Motion should be denied in all respects.

## ARGUMENT

GMA's motion to dismiss based on Rules 12(b)(1), 12(b)(6) and 9(b) is without merit under controlling law.  As this Court has observed, in "analyzing a motion to dismiss, the pleadings should be read in the light most favorable to the non-moving party, and the plaintiff's allegations as to the material facts should be taken as true."  *Joao v. Cenuco, Inc.*, 376 F.Supp.2d 380, 381 (S.D.N.Y. 2005) (citing *Albright v. Oliver*, 510 U.S. 266, 267, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)).

This Court has recognized (*see, e.g.*, *Pac. Health Advantage v. Cap Gemini Ernst & Young*, No. 07-CV-4725, 2007 WL 2619052, at *2  (S.D.N.Y. Sept. 5, 2007)) that, faced with a Rule 12(b)(6) motion to dismiss, a plaintiff must merely assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).  This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)

---

[5]  GMA has a history of attempting to misuse injunctions to intimidate parties to whom they do not apply.  In *GMA Accessories, Inc. v. Positive Impressions, Inc.*, 181 F.3d 82 (2d Cir. 1999), the Second Circuit affirmed a decision vacating a preliminary injunction awarded GMA because of GMA's misuse of that injunction by sending it to 2,350 of the defendant's customers in an effort to coerce them to comply with an injunction that did not apply to them.  Complaint ¶ 45.

(emphasis in original); *Patane v. Clark*, No. 06-3446-CV, 2007 WL 4179838, at * 3 (2d

Cir. Nov. 28, 2007)(same); *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d

Cir. 2007) (pleading must "raise a right to relief above the speculative level") (internal quotation

marks omitted) (quoting *Twombly*, 127 S.Ct. at 1965); *Pac. Health Advantage,* 2007 WL

2619052, at *2; *Druyan v. Jagger***,** 508 F.Supp.2d 228, 235-36 (S.D.N.Y. 2007); *In re Bayou

Hedge Fund Litig.***,** Nos. 06-MDL-1755 and 06-CV-2943, 2007 WL 2319127, at *6 (S.D.N.Y.

July 31, 2007).

In deciding a motion to dismiss for lack of Article III standing under Rule 12(b)(1), this

Court has counseled:

> In general, a district court must accept the allegations contained in the complaint as true
> for purposes of deciding a motion to dismiss. *See Cohen v. Koenig,* 25 F.3d 1168, 1172-
> 73 (2d Cir.1994). When a motion to dismiss challenges the court's jurisdiction under
> Rule 12(b)(1), however, a district court may look beyond the allegations of the
> complaint. "Fact-finding is proper when considering a motion to dismiss where the
> jurisdictional facts in the complaint ... are challenged." *Moyer v. United States,* 190 F.3d
> 1314, 1318 (Fed.Cir.1999); *See also Reynolds v. Army and Air Force Exch. Serv.,* 846
> F.2d 746, 747 (Fed.Cir.1988) ("If a motion to dismiss for lack of subject matter
> jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the
> district court may consider relevant evidence in order to resolve the factual dispute.");
> *LeBlanc v. Cleveland,* 198 F.3d 353, 355 (2d Cir.1999) ("Where jurisdictional facts are
> placed in dispute, the court has the power and obligation to decide issues of fact by
> reference to evidence outside the pleadings, such as affidavits.") This is a corollary of the
> general rule that a court always has the power (i.e. has jurisdiction) to determine whether
> it has jurisdiction.

*Leighton Techs. LLC v. Oberthur Card Systems, S.A.*, No. 04 Civ. 2496, 2007 WL 2230157, at

*4 (S.D.N.Y. July 11, 2007).

As demonstrated below, GMA's Motion should be denied in its entirety.

## I.     RONSON'S REQUEST FOR DECLARATORY RELIEF IS PROPER

### A.     Ronson Has Met The Article III Declaratory Judgment Standard

Ronson's request for declaratory relief is proper and should not be dismissed.   GMA

argues that Ronson's request for declaratory relief should be dismissed because it has not set

forth an actual and immediate threat of a lawsuit; however, GMA has misstated the requirements

for a declaratory judgment action.[6]   The Supreme Court recently set forth the following as the

standard for determining whether a declaratory judgment is appropriate: "the question in each

case is whether the facts alleged, under all the circumstances, show that there is a substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct.

764, 771 (2007), *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273

(1941).

It has been recognized that *MedImmune* "changed the law . . . in effect lowering the bar

for a plaintiff to bring a declaratory judgment action…."  *Frederick Goldman, Inc. v. West,* No.

---

[6]  GMA also improperly cites to *Moog Controls, Inc. v. Moog, Inc.*, 923 F.Supp. 427 (W.D.N.Y. 1996) for the proposition that, in circumstances such as this case, a plaintiff may file a federal lawsuit for declaratory judgment <u>only</u> where the plaintiff has been threatened with federal trademark infringement <u>and</u> there is a question as to the validity of the trademark registration. That is not the law, nor the holding in *Moog*.  In *Moog,* a trade name licensee brought an action against a licensor, alleging interference with the licensee's rights under a license agreement.  The court in *Moog* stated that "[i]n the *typical* federal trademark or patent declaratory judgment action, a potential infringer seeks a declaration that the defendant's *federal* rights will not be infringed by the plaintiff's actions, or that the defendant's patent or mark is invalid."   923 F.Supp. 427, 430 (W.D.N.Y. 1996)(emphasis added).  The *Moog* court found that it could not exercise subject matter jurisdiction over plaintiff's claim for a declaratory judgment of non-infringement as to its right to use the "Moog" name because plaintiff's claim was merely a defense to an anticipated claim for <u>breach of contract</u> and thus, the right to use the name was properly determined by state contract law and not by the Lanham Act.  *Moog*, 923 F.Supp. at 431.  That is not the situation here.

10

06 Civ. 3413, 2007 WL 1989291, at *3 (S.D.N.Y. July 6, 2007). *See, e.g., SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed.Cir.2007)("In finding declaratory judgment jurisdiction in *MedImmune*, the Court specifically addressed and rejected our reasonable apprehension test[.]"); *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007)("[O]ur post-*MedImmune* decisions … have made clear that a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties.").[7]

      Indeed, "Article III jurisdiction may be met where [an Intellectual Property holder] takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp.*, 480 F.3d at 1381; *see Frederick Goldman,* 2007 WL 1989291, at *3 (finding a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment where defendant sent letters to plaintiff's customers regarding a potential infringement and where plaintiff received an email from defendant threatening to enforce its IP rights); *Linzer Prods. Corp. v. Sekar*, 499 F.Supp.2d 540, 560 (S.D.N.Y. 2007) (finding the dispute satisfies the case or controversy standard as set forth in *MedImmune* because 1) the parties have adverse interests in their legal relations; 2) the

---

[7]  Even if the Court were to require Ronson to show a "reasonable apprehension of liability," Ronson easily satisfies that requirement in light of GMA's activities, as described herein and in the Complaint. *See Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, No. 06 Civ. 2652, 2006 WL 2089926, at *4 (S.D.N.Y. July 21, 2006) (requirement satisfied where cease and desist letter sent and parties' adversarial relationship over time created sufficient apprehension of liability); *Larami Corp. v. Amron*, No. 92 Civ. 7323, 1994 WL 369251, at *4 (S.D.N.Y. July 13, 1994), ("Threats against the plaintiff's customers or licensees will suffice to establish a reasonable apprehension of suit and an actual case or controversy.").

controversy is real and substantial; 3) the case does not require suppositions about a hypothetical state of facts as the facts are amply developed; and 4) the controversy would be resolved by the declaratory judgments the plaintiff seeks).

Here, Ronson's Complaint clearly sets forth a proper request for declaratory relief. First, GMA sent a cease and desist letter to Ronson. *See* Complaint ¶ 17, Sacks Decl. Ex. A. Second, during the course of the Opposition, GMA has alleged that the sale of goods bearing the CHARLOTTE RONSON Marks infringe GMA's Marks. Moreover, GMA has asserted that Ronson should be enjoined from changing the brand of its line to CHARLOTTE RONSON. Sacks Decl. ¶¶ 9-10; Sacks Decl. Exs. E-F. Further, GMA has sent cease and desist letters to and even sued several of Ronson's customers. Sacks Decl. ¶ 17; Complaint ¶ 41.

As a result, GMA and Ronson have adverse interests and the controversy between them is real and substantial. Ronson has clearly met the requirements for seeking declaratory relief.

### B.    Threats Against Customers Alone Are Sufficient For Article III Purposes

In patent and trademark cases, threats against a plaintiff's customers or licensees alone will suffice to establish Article III standing to bring a claim for declaratory relief. *See, e.g.*, *Larami Corp.*, 1994 WL 369251, at *4; *Nippon Elec. Glass Co., Ltd. v. Sheldon*, 489 F.Supp. 119, 121-22 (S.D.N.Y. 1980)("When [an IP] holder complains that a manufacturer's customers are guilty of direct infringement due to their use or sale of plaintiff's products, the [IP] holder is impliedly charging the manufacturer with contributory infringement as well."); *Airship Indus. (UK) Ltd. v. Goodyear Tire & Rubber Co.*, 643 F.Supp. 754, 759 (S.D.N.Y. 1986)("courts have frequently found the existence of an actual controversy where the defendant, although threatening the plaintiff's customers with legal action, had made no threat against the plaintiff and, in fact, had disclaimed any intention of bringing suit against the plaintiff."). "Were this not so, [an IP

12

holder] would be able to avoid suit by an injured manufacturer merely by not threatening him directly with infringement, while threatening his customers with suits. This result would frustrate the remedial purpose of the Act." *Nippon Elec. Glass Co.,* 489 F.Supp. at 122. This is yet another reason why the Declaratory Judgment claim should not be dismissed here.

C.    **The Opposition Proceeding Commenced by GMA Does Not Insulate GMA From District Court Litigation**

Without reference to any legal support, GMA argues that it should not have to litigate in this Court since it is already litigating its Opposition against Ronson before the TTAB. The existence of the Opposition, however, does not <u>insulate</u> GMA from district court litigation to resolve the parties' respective rights. Indeed, the issues and remedies in the Opposition and in this case are legally distinct. The issue in the TTAB proceeding is whether Ronson's CHARLOTTE RONSON trademark applications can pass to registration, while the issue set forth in the declaratory judgment claim is whether Ronson's sale of products using of the CHARLOTTE RONSON marks infringes upon GMA's trademark rights in the CHARLOTTE and CHARLOTTE & FRIENDS Marks.[8] Indeed, the TTAB is not making any determination of infringement and at the conclusion of that proceeding, the issue of infringement will remain

---

[8]   While both the TTAB and the Second Circuit consider a likelihood of confusion analysis in making their determinations, those standards differ. The TTAB relies upon the *Dupont* Factors, which largely analyze the marks at issue. *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563 (C.C.P.A. 1973). The Second Circuit, on the other hand, relies upon the *Polaroid* test, which analyzes the use of the marks in determining whether there is a likelihood of confusion. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36 (1961). A likelihood of confusion analysis considers all the *Polaroid* factors, but the "ultimate question" is "whether, looking at the products in their totality, consumers are likely to be confused." *Star Indus., Inc. v. Bacardi & Co.,* 412 F.3d 373, 374 (2d Cir. 2005).

unresolved.[9]  Thus, GMA would be able to bring an action for infringement against Ronson regardless of the USPTO's determination in the Opposition.  *See Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 853-54 (2d Cir. 1988) (outcome of PTO proceeding does not affect legal determination of infringement claim; district court must still independently decide validity and priority of marks and likelihood of consumer confusion).  For the same reasons, Ronson has a sufficient basis to warrant the issuance of a declaratory judgment here.

GMA's citation to *Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.* and *Topp-Cola Co. v. Coca-Cola Co.*, to suggest that Ronson cannot establish declaratory relief is belied by the very quote that GMA cites:  the "filing of an opposition in a trademark registration proceeding 'is not **by itself** a charge or warning of a future charge of infringement' and therefore does not, **without more**, create an actual controversy."  *Progressive Apparel Group,* No. 95 Civ. 2794, 1996 WL 50227, at *2 (S.D.N.Y. Feb. 8, 1996)(emphasis added); *Topp-Cola Co.*, 314 F.2d 124, 125-26 (2d Cir. 1963).  As detailed above, the controversy here is established by much more than the mere filing of the Opposition.[10]  Moreover, at least one court had found that the

---

[9]  GMA improperly states that both GMA and Ronson have summary judgment motions pending in the TTAB where the parties are seeking a determination of the primary issue, *i.e.*, does Ronson have the right to use CHARLOTTE RONSON.  *See* GMA's Memo, at 1.  This statement is factually incorrect for two reasons.  First, the primary issue in the TTAB proceeding is **not** whether Ronson can use CHARLOTTE RONSON as a trademark.  That is the issue in <u>this</u> case.  Rather the issue in the TTAB proceeding is whether Ronson can obtain a federal trademark registration for the mark CHARLOTTE RONSON.  The TTAB has no authority to limit Ronson's use of the CHARLOTTE RONSON trademark in commerce.  Second, GMA does not currently have a motion for summary judgment pending; GMA merely has a motion for reconsideration pending.  The TTAB denied GMA's motion for summary judgment on November 6, 2006 (a copy of which is attached to the accompanying Sacks Decl. as Ex. D) and GMA's Motion for Reconsideration has been pending since November 29, 2006.

[10] *Progressive*, unlike this case, **concerned only the registration of a trademark**.  In *Progressive*, there was no threat of an infringement suit, either direct or indirect, and there was

mere filing of an opposition in the TTAB was sufficient to justify a declaratory judgment action

of non-infringement. *NeilMed Prods. Inc. v. Med-Systems Inc.*, 81 U.S.P.Q.2d 1598, 1601

(N.D.Cal. 2007). Regardless, GMA cannot rely on the Opposition to preclude the claims Ronson

asserts in this action.

      For all of the foregoing reasons, GMA's motion to dismiss Ronson's request for

declaratory relief should be denied.

## II.    <u>THIS COURT HAS SUBJECT MATTER JURISDICTION TO CANCEL THE GMA CHARLOTTE MARKS</u>

      This Court plainly has subject matter jurisdiction to cancel the GMA CHARLOTTE

Marks under 15 U.S.C. § 1119. GMA argues that this Court "is without jurisdiction to hear a 15

U.S.C. Section 1119 claim when there is no other justiciable controversy between the parties

involving the defendant's mark." *See* GMA Memo, at 6. That is wrong. Where, as here, a Court

has jurisdiction to issue a declaratory judgment, it has supplemental jurisdiction to rule on the

plaintiff's cancellation claims pursuant to 15 U.S.C. § 1119. *Barbarian*, 2006 WL 2089926, at

*5.

      In *Barbarian,* the plaintiff sought a declaratory judgment that its marks did not infringe

those belonging to the defendant, that its marks did not violate any of the defendant's rights

related to those marks and for cancellation of defendant's trademarks. In that case, the defendant

sent a cease and desist letter to the plaintiff in 2004. After letters were sent between the parties'

--------------------------------------

no reasonable basis on which to conclude that the dispute would eventually develop into an
infringement suit. *Progressive,* 1996 WL 50227, at *4. Similarly, in *Topp-Cola* a declaratory
judgment action was brought by an applicant solely concerning the plaintiff's right to register its
trademark in Puerto Rico. The court found that "the filing of an opposition in a local registration
proceeding was not **by itself** a charge or warning of a future charge of infringement." *Topp-Cola*, 314 F.2d at 125-26 (emphasis added).

counsel, the defendant initiated opposition proceedings against plaintiff's trademark application for WORLD RUGBY in 2004. Plaintiff initiated cancellation proceedings against defendant's trademark registration.

Over two years after the opposition proceeding was filed, plaintiff filed a declaratory judgment action in federal court. In finding that it had jurisdiction for the declaratory judgment action, and thus supplemental jurisdiction to rule on the cancellation claim, the court stated:

> The defendant's initial letter to the plaintiff clearly presented a threat of litigation, which was not very well disguised. The time that has elapsed after it was sent has not served as a cooling off period, nor has it been used for amicable negotiations. Rather, the parties' relationship appears to have worsened so that the plaintiff's apprehension of liability was both real and reasonable at the time it filed this action.

*Barbarian,* 2006 WL 2089926, at *4. The court found further that the parties' relationship was sufficiently adversarial to satisfy the requirements for declaratory relief because the plaintiff already manufactured and marketed the goods at issue and the defendant had sought to prevent the plaintiff from using its mark on goods that it was marketing and were important to their business. *Id.*

Similarly, Ronson's claims for cancellation are not its basis for jurisdiction. Rather, Ronson's request for a declaration of non-infringement is the basis of this Court's subject matter jurisdiction. The jurisdiction for the cancellation claims flow from that.

## III.    RONSON COMPLIED WITH RULE 9(b)

Ronson's claims to cancel the GMA CHARLOTTE Marks for fraud on the USPTO plead fraud with particularity. To meet the requirements of Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Baffa v. Donaldson, Lufkin & Jenrette Sec.*

16

*Corp.*, 999 F.Supp. 725, 727 (S.D.N.Y. 1998). The purpose of Rule 9(b) is to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *Id.* (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)(citations omitted)). Here, Ronson complied fully with the requirements of Rule 9(b) as it sets forth its allegations of fraud with specificity.

In its Complaint, Ronson alleges two causes of action based on GMA's fraud – both of which set forth the claims in sufficient detail to satisfy the requirements of Rule 9(b) and provide GMA with the requisite notice of the basis of the claims. Ronson's Third Claim for Relief (Complaint ¶¶ 57-60) alleges that GMA filed trademark applications, Statements of Use, and 8&15 Declarations in which GMA's counsel asserted that GMA was using the mark at issue on <u>all</u> the goods identified in that application or registration as of the date indicated. Complaint ¶ 21. In the Complaint, Ronson lists each trademark at issue that it is aware of in detail (Complaint ¶ 18), lists all the goods for each application that GMA claimed it was using the mark in connection with (Complaint ¶ 18), and identifies the marks and filing dates for each 8&15 Declaration in which GMA made its false assertions (Complaint ¶¶ 19-20). Ronson further alleges that GMA was not using the mark on all the goods it listed in those identified applications/registrations and that the dates of first use that were alleged by GMA were false. Complaint ¶¶ 22, 28. There is no question that these allegations provide GMA notice of Ronson's claims. Any additional details are exclusively within the possession of GMA.

Similarly, in Ronson's Fourth Claim for Relief (Complaint ¶¶ 62-67), Ronson alleges that GMA falsely asserted under oath in its trademark applications (and again each of those applications is identified in great detail in Paragraph 18 of the Complaint) that no one else had

17

the right to use a mark that was likely to cause confusion with the applied-for mark.  Complaint ¶¶ 23, 65.  GMA made this representation despite the existence of several other prior uses of the mark "Charlotte" in the fashion industry.  Ronson alleges in detail the nature of those other uses, particularly that of Charlotte Russe, Charlotte Tarantola and Charlotte Ford (Complaint ¶¶ 29-25, 63), and clearly alleges that GMA knew, or should have known, of these prior uses (Complaint ¶ 64).  Further, Ronson alleges that GMA itself has contended that these marks are likely to cause confusion with its CHARLOTTE Marks, yet failed to disclose that fact to the USPTO, instead affirmatively representing that they did not exist.  Complaint ¶¶ 39-40, 62, 64.  Again, GMA has full notice of the nature of this claim.

GMA also argues that Ronson failed to allege injury with respect to the § 1119 cancellation claims.  GMA misses the point.  Ronson has alleged injury, *i.e.*, the registration of the GMA CHARLOTTE Marks.  Pursuant to 15 U.S.C. § 1064, 37 CFR § 2.111(b) and §§ 303.01 and 309.03(b) of the Trademark Trial and Appeal Board Manual of Procedure ("TMBP"), a party has standing to petition to cancel a mark if that party believes that he is or will be damaged by the registration of a mark on the principal register.  Thus, when seeking cancellation of a mark, the Petitioner does not need to plead monetary damages, and seeking cancellation — as Ronson has done herein — is sufficient.[11]

---

[11] It is for this reason that the cases cited by GMA are inapposite.  *See e.g., GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 242-43 (S.D.N.Y. 2000) (considering a claim for damages under §1120, not §1119 where damages are not required).

18

For all of the foregoing reasons, the Motion to dismiss the § 1119 cancellation claims based on fraud should be denied.[12]

## IV.    RONSON'S TRADEMARK MISUSE CLAIM SHOULD NOT BE DISMISSED

Ronson's trademark misuse claim should not be dismissed.  GMA received an exclusive right to use the GMA Marks from the USPTO.  See 15 U.S.C. § 1057 (b) ("A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate").  GMA has abused that exclusive grant, and is subject to cancellation and damages as a result.  It does not get a free ride.

Ronson has alleged:

> The GMA CHARLOTTE Marks lack significance as single source identifiers. Nevertheless, GMA has continued to sue and threaten to sue companies who use the word CHARLOTTE in connection with other words and continues to sue and threaten to sue retailers for selling said goods.  That suits and threatened suits are objectively and subjectively baseless and interposed by GMA with bad faith and the intent to directly injure and harass Ronson's and others' business relationships through the use of governmental process as an anticompetitive weapon.  As a result, Ronson has been injured by GMA's actions.  (Complaint ¶ 54).

That pleading asserts a valid claim to cancel GMA's CHARLOTTE Marks for trademark misuse.  For example, in *Whitney Information Network, Inc. v. Gagnon*, 353 F.Supp.2d 1208 (M.D. Fla. 2005), the defendant asserted a counterclaim under 15 U.S.C. § 1119, seeking a

---

[12]  Although Ronson believes that its fraud claims were properly pled in the Complaint, if there is any issue in that regard, attached as Ex. I to the Sacks Decl. is a proposed amended complaint setting forth the fraud claims in further detail.

19

declaration that plaintiff's service marks were invalid and unenforceable and for cancellation of plaintiff's trademark applications. Plaintiff moved to dismiss because 15 U.S.C. § 1119 only allows a court to cancel a <u>registered</u> mark, not an application for a mark. The Court agreed and held that the counterclaim for trademark misuse and cancellation under § 1119 could not lie **without a registered mark**. *Id. at* 1211. Importantly, the Court went on to hold – contrary to Plaintiff's position here – that the defendant would indeed be allowed to include the counterclaim for cancellation based on trademark misuse in an amended counterclaim if they could plead the existence of a registered service mark. *Id. at* 1211-12.

Here, there is no dispute that GMA has numerous registered marks. Accordingly, Ronson's claim for cancellation based on trademark misuse is valid. *See Juno Online Services, L.P., v. Juno Lighting, Inc.*, 979 F.Supp. 684 (N.D. Ill. 1997) (a claim for trademark misuse may be viable in a situation where the mark holder attempts to "destroy its competitors through the use of its mark"); *McGuire v. Regents of Univ. of Mi.*, No. 2:99CV1231, 2000 WL 1459435, at *6 (S.D. Ohio Sept. 21, 2000) (noting that "an affirmative claim for trademark misuse is indeed a novel theory," but refusing to dismiss the claim on a motion to dismiss").

A similar point was made by Judge Lynch when he rejected GMA's effort to dismiss counterclaims seeking recovery of fees for defense of the action in *GMA Accessories, Inc. v. Croscill, Inc*, 06 Civ. 6236 (S.D.N.Y. March 12, 2007). The Court found that "the Second Circuit has explicitly held that defendants may be awarded attorney's fees under the Lanham Act …in cases where the action has been brought in bad faith . . . . *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194-95 (2d Cir. 1996)." *Id.* at 8. The Court denied the motion to dismiss the counterclaims, finding that whether the lawsuit was brought in bad faith was a factual issue for

trial. *Id.* That same result should accrue here – GMA's bad faith misuse of its marks are indeed factual questions.

Whether Ronson's claim is labeled "trademark misuse," "unfair competition" or some other label, the label attached to the claim is irrelevant so long as the facts alleged make out a cognizable claim for the relief requested. *See Pioneer Comm. Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871, 887 (S.D.N.Y. 1991) (noting that the "Federal Rules of Civil Procedure only require the pleading of a claim and the specific label given to a cause of action is unimportant"). The real issue is "whether the facts alleged create a claim upon which relief can be granted." *Id.* Here, Ronson has alleged that GMA's threats of suit and suit are objectively and subjectively baseless and that GMA is using its mark in bad faith and for an unlawful purpose, specifically injuring Ronson and damaging Ronson's relationships with its customers. Those allegations are sufficient to support a claim for cancellation of GMA's registered marks for misuse under 15 U.S.C. § 1119.

## V.    RONSON'S UNFAIR COMPETITION CLAIM IS PROPER

For similar reasons, Ronson's unfair competition claim is proper. GMA improperly attempts to limit the tort of unfair competition by imposing a requirement that Ronson "allege that GMA infringed a trademark or trade name" to state a claim. *See* GMA Memo, at 7. However, "[t]here can be unfair competition without the existence of trademark infringement…." 104 N.Y. Jur. 2d *Trade Reg.* § 135 (2007). The Second Circuit has stated that a common law unfair competition claim "must be grounded in either deception **or** appropriation of the exclusive

property of the plaintiff." *H.L Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989)(emphasis added).[13]

"A business competitor is liable for interfering with the business relations of another by deliberately making false statements, such as falsely claiming a patent or trademark infringement. Similarly, warnings and threats of prosecution against a competitor, his or her customers, or the trade, to intimidate and coerce, are a form of unfair competition that will be enjoined."  104 N.Y. Jur. 2d *Trade Reg.* § 271 (2007); *Croscill*, 06 Civ. 6236 (S.D.N.Y. March 12, 2007) at 8 (refusing to dismiss damage claims based on GMA's bad faith litigation); *Downes v. Culbertson*, 153 Misc. 14, 275 N.Y.S. 233, 242 (N.Y. Sup. Ct. 1934) ("Threats of prosecution against a competitor, his customers or the trade, made not in good faith but to intimidate and coerce, and false statements, fraudulent advertising, and deceptive claims to exclusive rights constitute unfair competition and will be enjoined."); *Lewis Invisible Stitch Mach. Co. v. Columbia Blindstitch Mach. Mfg. Corp.*, 22 F.Supp. 705, 713 (S.D.N.Y. 1937).  For example, in *Price-Hollister Co. v. Warford Corp.*, 18 F. Supp. 129, 130-31 (S.D.N.Y. 1926), the court found that the defendant had misused a default decree by sending out misleading circulars to the trade concerning a consent decree.

---

[13]  In its Memo, GMA cites to *Frink America, Inc. v. Champion Road Machinery Ltd*, 62 F.Supp.2d 679, 685 (N.D.N.Y. 1999) for the proposition "[t]he gravamen of a claim of unfair competition is a bad faith misappropriation of a commercial advantage to another by infringement or dilution of trademark or trade name or by exploitation of proprietary information or trade secrets." *See* GMA Memo, at 7.  That ignores the Second Circuit's opinion in the very same case.  On appeal, the Second Circuit found, in an unpublished decision, that "'Unfair competition' is the general term applied to any form of unlawful business injury …. [that] is tortious in nature….in essence, it requires business rivals to compete fairly and honestly."  *Frink America, Inc. v. Champion Road Machinery Ltd.*, 216 F.3d 1072, No. 99-9034, 2000 WL 754945, at *3 (2d Cir. May 24, 2000)(citing 104 N.Y.Jur.2d *Trade Reg.* § 119 (1992)).

Similarly, here, GMA has unfairly competed by using the default judgment order in the

Solnicki Matter and bad faith litigation to attempt to stop Ronson's customers from selling

CHARLOTTE RONSON branded products.  That alleged conduct supports a claim for unfair

competition.

**VI.    RONSON'S TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS
RELATIONS CLAIM SHOULD NOT BE DISMISSED**

GMA admits that Ronson's claim for tortious interference with prospective business

relations is proper, but asks that it be dismissed because diversity is lacking between the parties.

*See* GMA Memo, at 7.  Pendent jurisdiction of Ronson's state law claims is proper pursuant to

28 U.S.C. § 1367 given Ronson's valid federal claims, as set forth above.  Thus, the tortious

interference claim should not be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated:  New York, New York
        December 3, 2007                          Respectfully submitted,


                                        /s/ Ira S. Sacks_____
                                        Ira S. Sacks
                                        Mary L. Grieco
                                        Safia A. Anand
                                        Dreier LLP
                                        499 Park Avenue
                                        New York, NY 10022
                                        (212) 328-6100

                                        Lisa T. Simpson
                                        Orrick, Herrington & Sutcliffe LLP
                                        666 Fifth Avenue
                                        New York, NY 10103
                                        (212) 506-5100
                                        *Attorneys for Plaintiff*

23