# Exhibit E

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD
-----------------------------------------------------------x
GMA ACCESSORIES, INC.,

        Plaintiff-Opposer,

    v.

C. RONSON, INC.,

        Defendant-Applicant.
-----------------------------------------------------------x

Consolidated
Opposition No. 91167353
Opposition No. 91168148
Opposition No. 91172177

## BRIEF IN OPPOSITION TO
## APPLICANT'S MOTION FOR SUMMARY JUDGMENT

### Statement of Facts

For a comprehensive summary of the facts germane to this motion, the Board is respectfully referred to the accompanying declarations of Medea B. Chillemi and William Maloof.

### ARGUMENT

**I.    Summary Judgment Standard**

Motions for summary judgment in the Trademark Trial and Appeal Board are governed by Fed. R. Civ. P. 56. See 37 CFR § 2.127. Under Rule 56(c), a motion for summary judgment is to be used as a pretrial device to dispose of cases in which "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

1

judgment as a matter of law." See <u>Paramount Pictures Corp. v. White</u>, 31 U.S.P.Q.2d 1768 (T.T.A.B. 1994), <u>Sweats Fashions Inc. v. Pannill Knitting Co., Inc.</u>, 833 F.2d 1560, 4 U.S.P.Q.2d 1793 (Fed. Cir. 1987), <u>Pure Gold, Inc. v. Syntex (U.S.A.), Inc.</u>, 739 F.2d 624, 222 U.S.P.Q. 741 (Fed. Cir. 1984).

On a motion for summary judgment, the moving party has the burden of demonstrating, prima facie, that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. See <u>Copelands' Enterprises Inc. v. CNV Inc.</u>, 945 F.2d 1563, 20 U.S.P.Q.2d 1295 (Fed. Cir. 1991). The burden of the moving party may be met by showing that there is an absence of evidence to support the nonmoving party's case. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

## II.　There is Likelihood of Confusion between Applicant's and Opposer's Marks.

The Lanham Trademark Act, Section 2 (d) prohibits the registration of marks that would lead to confusion, mistake or deception. According to 15 U.S.C. § 1052 (d) (2007):

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register unless it: ... consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake or to deceive.

This section of the Lanham Act requires the opposer to the registration of the mark to show a likelihood of confusion between its marks and applicant's mark.

2

See, Yamaha Int'l Corp. v. Hoshino Gakki Co., 840 F.2d 1572, 1579-1580 (Fed. Cir. 1988).

In determining whether or not there is a likelihood of confusion between marks, courts analyze all of the probative facts that are relevant to the factors set forth in the Application of E.I. DuPont DeNemours & Co., 476 F.2d 1357 (CCPA 1973); See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311 (Fed. Cir. 2003). Any doubt regarding the likelihood of confusion must be resolved in favor of the prior registrant. In re Hyper Shoppes (Ohio), Inc., 837 F.2d 463, 6 U.S.P.Q.2d 1025 (Fed. Cir. 1988); See also, Hard Rock Café Int'l (USA) Inc. v. Elsea, 56 U.S.P.Q. 1504, 1514 (TTAB 2000) ("It is a well-established principle that one who adopts a mark similar to the mark of another for the same or closely related goods or services does so at his own peril, and any doubt as to likelihood of confusion must be resolved against the newcomer and in favor of the prior user or registrant."); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1181 (9th Cir. 1988) (omitting internal citations) ("A newcomer who has the 'entire material universe' or…'a whole dictionary full of words, an encyclopedia full of proper names, or a world atlas full of place names,' from which it could have chosen its name and mark, has the duty to avoid the use of a mark similar to an established one.")

Federal Circuit precedent establishes that the evaluation of the likelihood of confusion with respect to the marks does not require an examination and findings as to each of the thirteen DuPont factors. Kenner Parker Toys, Inc. v.

Rose Art, Indus., Inc., 963 F.2d 350 (Fed. Cir. 1992) (explaining that different DuPont factors may play dominant roles in determining the likelihood of confusion, depending on the evidence set forth in each case). See also, Bose Corp. v. QSC Audio Products, Inc., 293 F.3d 1367, 1370 (Fed. Cir. 2002) (stating that the scope of the Trademark Trial and Appeal Board's focus will be ordinarily established by the record presented by the parties in the case).

Oftentimes, the Court may base its decision on such dispositive factors as the similarity of the marks and the relatedness of the goods. Han Beauty, inc. v. Alberto-Culver Co., 236 F.3d 1333, 1336 (Fed Cir. 2001) (citing Dixie Restaurants, Inc., 105 F.3d 1405, 1406-1407 (Fed. Cir. 1997). Based on the evidence that has been provided in this matter, the Opposer will focus upon the following factors of the DuPont test for likelihood of confusion:

> Factor #1: Similarity or dissimilarity of the marks in their entireties as to appearance, sound connotation, and commercial impression.
>
> Factor #2: Similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.
>
> Factor #3: Similarity or dissimilarity of established, likely-to-continue trade channels.
>
> Factor #5: The fame of the prior mark (sales, advertising and length of use).
>
> Factor #4: The conditions under which and buyers to whom sales are made, i.e. "impulse" vs. careful, sophisticated purchasing.
>
> Factor #6: The number and nature of similar marks in use on similar goods.

4

> Factor #7: The nature and extent of any actual confusion.
>
> Factor #12: The extent of potential confusion, i.e. whether de minimus or substantial.
>
> Factor #13: Any other established fact probative of the effect of use. In our brief, we will address bad faith with respect to this factor.

### A. The Marks are Similar

In assessing the similarity or dissimilarity of the marks in their entirety, the first DuPont prong, the Court must look to the appearance, sound and connotation of the marks. Packard Press, Inc. v. Hewlett-Packard Co., 227 F.3d 1352, 1357 (Fed. Cir. 2000) (citing DuPont, 476 F.2d at 1361 and Olde Tyme Foods, Inc. v. Roundy's, Inc., 961 F.2d 200, 200-203 (Fed. Cir. 1992) ). The commercial impression that is created in the minds of consumers is also a crucial element in the evaluation of the marks' similarity. Coors Brewing Co., 343 F.3d 1340, 1343 (citing In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 1566 (Fed. Cir. 1984).

The GMA mark consists of words only, with the dominant word, CHARLOTTE prominently appearing in block letters. The applicant's mark "CHARLOTTE RONSON" indisputably incorporates the identical mark that is registered by GMA. Taking into account the sound and appearance of these marks, it is logical to state that "CHARLOTTE" is the dominant feature of both marks. It is that portion of the marks which is most likely to stand out in potential consumers' minds upon encountering applicant's products in the marketplace. The Federal Circuit has stated that "[o]nce all the features of the mark are

5

considered…it is not improper to state that, for rational reasons, more or less weight has been given to a particular feature of the mark…" Packard Press, Inc., 227 F.3d at 1357. See also, Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1570 (Fed. Cir. 1983).

It is well-settled that adding another word or name to a single word mark is not sufficient to overcome a likelihood of confusion between two separate marks under Section (d) of the Lanham Act. See e.g. Coca Cola Bottling Co. v. Joseph E. Eagram & Sons, Inc., 526 F.2d 556, 188 USPQ 105 (C.C.P.A 1975) ("BENGAL" and "BENGAL LANCER"); Lilly Pulitzer, Inc. v. Lilli Ann Corp., 376 F.2d 324, 153 USPQ 406 (C.C.P.A 1967)("THE LILY" and "LILY ANN"); In re El Torito Restaurants Inc., 9 USPQ2d 2002 (TTAB 1988) ("MACHO" and "MACHO COMBOS"); In re United States Shoe Corp., 229 USPQ 707 (TTAB 1985) ("CAREER IMAGE" and "CREST CAREER IMAGES"); In re Corning Glass Works, 229 USPQ 65 (TTAB 1985) ("CONFIRM" and "CONFIRMCELLS"); In re Riddle, 225 USPQ 630 (TTAB 1985) ("ACCUTUNE" and "RICHARD PETTY's ACCU TUNE"); In re Cosvetic Laboratories, Inc., 202 USPQ 842 (TTAB 1979) ("HEAD START" and "HEAD START COSVETIC"). TMEP Section 1207.01(b)(iii). In re Denisis, 225 U.S.P.Q. 624 (TTAB 1985); CFM Majestic, Inc. v. NHC, Inc., 93 F.Supp.2d 942 (N.D. Ind. 2000); Trident Seafoods Corp. v. Triton Fisheries, LLC., 2000 WL 33675750 at *6 (D. Alaska June 30, 2000); Physicians Formula Cosmetic, Inc v West Cabot Cosmetics 857 F.2d 80, 82 (2d Cir. 1988); Wynn Oil Company v. Thomas, 239 F.2d 1183 (6th Cir. 1988); 3 McCarthy on Trademarks §§ 23:55-23:56 at 23-164 through 23-169.

CHARLOTTE is without question, the dominant part of both marks. See Exhibits A of Chillemi Declaration, showing the more pronounced use of the CHARLOTTE Mark to identify a line of goods that until recently, was known as C. Ronson. Therefore, it is eminently reasonable to assume that applicant's and opposer's marks are confusingly similar. If applicant's registration and further dissemination of goods with the CHARLOTTE mark are allowed to progress, it is likely that consumers will not be able to distinguish between the marks.

### B. The Goods are Related.

The second DuPont factor, assessing the relatedness of the goods, requires a comparison of the goods as described in the application and registration. Bose Corp., 293 F.3d at 1376 (citing DuPont, 476 F.2d at 1361).

GMA has many registrations, most notably in Classes, 18, 25 and 26:

> The mark CHARLOTTE for "sacks and bags, namely, handbags made of textiles and beads" in International Class 18;

> the mark CHARLOTTE for "clothing, footwear and headgear, namely, hats, scarves, gloves and socks" in International Class 25; and

> The mark CHARLOTTE for "hair accessories, namely, hair clips, scrunchees, ribbons and braids" in International Class 26.

See ¶ 8 of Chillemi Declaration and Exhibits E, F, and G.

The goods that applicant seeks to register, at least with respect to Classes 18 and 25 are very similar to the goods for which GMA holds incontestable registrations. Under section 33 (b) of the Lanham Act, registration of an incontestable mark is conclusive evidence of ownership, validity of the mark and

the exclusive right of the owner to use the mark in commerce. The potential for consumer confusion as to source is great.

### C. The Trade Channels in Which the Goods are Disseminated are Similar

The third DuPont factor is "the similarity or dissimilarity of established, likely-to-continue trade channels." Bose Corp., 293 F.3d at 1377 (citing DuPont, 476 F.2d at 1361). Unless there is a specific delineation as to channels of trade in the registration and application, the Court should consider the "normal and usual channels of trade and method[s] of distribution." Kangol Limited v. Kangaroos U.S.A., Inc., 974 F.2d 161, 164 (Fed. Cir. 1992) (citing CBS Inc. v. Morrow, 708 F.2d 1579, 1581 (Fed. Cir. 1983); See also, Canadian Imperial Bank v. Wells Fargo Bank, N.A., 811 F.2d 1490 (Fed. Cir. 1987). In this case, since the competing goods are items of apparel and accessories, they will be found in department stores, boutiques, and other similar clothing retail outlets. See Kangol Limited, 974 F.2d at 164 (stating that the competing products of golf shirts and athletic shirts would be expected to be found in department stores or specialty shops in close proximity to each other); See also, Baseball America, Inc. v. Powerplay Sports, Ltd., 71 U.S.P.Q. 1844 (TTAB 2004) (finding similar trade channels for "BASEBALL AMERICA" books and calendars relating to the game of baseball and "BASEBALL AMERICANA" for posters and educational services with respect to baseball and baseball history).

Here, applicant's and opposer's goods are both sold in boutiques and specialty stores. See also, William Maloof' Declaration at ¶4 and Chillemi

Declaration at ¶10. The trade channels through which the products are disseminated are very similar.

### D. Charlotte Possesses a Strong, Famous Mark

The fifth <u>DuPont</u> factor, fame of the prior mark, plays a dominant role in the Court's balance of the likelihood of confusion factors. <u>Packard Press, Inc.</u>, 227 F.3d at 1359. Famous marks are accorded more protection because they are more likely to be recalled and associated in the public mind than a weaker mark. <u>Recot, Inc.</u>, 214 F.3d at 1327 (citing <u>Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.</u>, 963 F.2d 350, 352 (Fed. Cir. 1992). However, in the likelihood of confusion calculus, fame is not an amorphous concept that is to be analyzed according to consumer's idiosyncratic opinions. In sharp contrast, there are practical indicia of fame, such as sales, advertising and the length of the use of the mark. <u>Packard Press, Inc.</u>, 227 F.3d at 1360 (citing <u>DuPont</u>, 476 F.2d at 1361). This means that the fame of a mark is customarily proven by evidence reflecting the volume of sales, the extent of advertising of the goods bearing the mark, and the length of time that those indicia of consumer awareness have been present. <u>Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd.</u>, 393 F.3d 1238, 1241-1242 (Fed. Cir. 2004). In particular, the TTAB has looked favorably upon a trademark owner's efforts to widely disseminate and market its products. See <u>Starbucks U.S. Brands, LLC and Starbucks Corp. v. Ruben</u>, 78 U.S.P.Q. 1741 (TTAB 2006) (favorably reviewing advertising dollars and sales volume in assessing the STARBUCKS marks).

In this case, GMA has aggressively and widely marketed its products. See Chillemi Declaration at ¶¶8-10. Between the years of 2004 and 2006, nearly $400,000 was spent in print advertising as well as close to $500,000 in GMA's showroom expenditures for the past seven years, for a total of approximately $900,000 in total advertising expenses. See William Maloof' Declaration at ¶7. GMA's CHARLOTTE mark is also distributed in numerous boutiques, specialty stores and department stores. See William Maloof' Declaration at ¶4. The revenue from such sales is very extensive. Id. Clearly, GMA's mark is widely visible and accessible in the marketplace, thus indicating that it is a strong mark.

### E. Applicant's and Opposer's Goods May be Categorized as "Impulse" Buys."

The fourth DuPont factor that is frequently considered by the TTAB in in evaluating the likelihood of consumer confusion is the conditions under which, and buyers to whom, sales are made (i.e. "impulse" vs. careful, sophisticated purchasing). DuPont, 476 F.2d at 1361. When goods are relatively inexpensive and subject to impulse buying, the risk of likelihood of confusion is increased because consumers are held to a lesser standard of care in purchasing. Recot, 214 F.3d at 1328.

Here, we are not dealing with goods that require a great deal of consumer deliberation when they are purchased. Clothing and related accessories are often purchased on the spur of the moment, based on a consumer's often-changing tastes. The matter at bar should be contrasted with other cases that have come before the TTAB where the goods involved were complex and

10

expensive. See Teledyne Technologies, Inc. v. Western Skyways, Inc., 208 Fed. Appx. 886, 889 (Fed. Cir. 2006) (citing the sophisticated nature of consumers when the goods at issue were aircraft engines and aircraft engine parts). See also, PC Club v. Primex Technologies, Inc., 32 Fed. Appx. 576, 579 (Fed. Cir. 2002) (stating the higher degree of care involved in purchasing when the products involved were electrical power supply systems for transportation vehicles and computers and computer parts). The cases in which a "careful, studied consideration and sophistication" was applied should be compared to cases in which the goods involved are subject to impulsive purchasing, the latter of which furthers the finding of a likelihood of confusion. Majestic Distilling, 315 F.3d at 1316.

In Majestic, the Federal Circuit affirmed the TTAB's finding that tequila and malt liquor were subject to impulse buys. Id. See also, Conopco, Inc. v. May Dept Stores Co., 46 F.3d 1556, 1572 (affirming trial court's assessment that skin care lotions are products that do not exact precise, in-depth consumer perception and may be purchased upon impulse); Recot, 214 F.3d at 1329 (stating that hasty purchasing may lead to confusion between FRITO-LAY human snacks and FIDO LAY dog food snacks).

Here, both GMA's and Charlotte Ronson's products are women's clothing and related accessories—items which are subject to cursory review prior to purchasing. A consumer will usually purchase such items without careful, studied examination. This will inevitably lead to confusion as to source, thus causing irreparable harm to GMA's CHARLOTTE marks.

### F. Applicant has Failed to Prove the Significance of Third Party Uses and Third Party Registrations

i) **Third Party Uses**

The sixth DuPont factor involves an examination of the number and nature of similar marks in use on similar goods. DuPont, 476 F.2d at 1361. In its brief, applicant states that it conducted Google searches that have allegedly yielded evidence of third party usage for clothing and accessories incorporating the name Charlotte. See Applicant's Brief at Section A, subsection (i), p. 18. This is insufficient evidence for proving the absence of the likelihood of confusion. In addressing this DuPont prong, the applicant is obligated to show that these marks were *actually used* by consumers, that they were well promoted or that they were recognized by consumers. Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1373 (Fed. Cir. 2005) (citing Scarves by Vera, Inc. v. Todo Imports, Ltd., 544 F.2d 1167, 1173 (2d Cir. 1976). There is no evidence, based on the results of Google searches, that the consuming public is actually aware of third party uses of the mark CHARLOTTE on clothing and accessories. In this case, there remains a strong likelihood of confusion between the marks and the goods to which they relate and the Court should find accordingly.

Furthermore, *even if* Applicant's citation of third party uses is deemed to be probative, it is undeniable that GMA has aggressively policed its mark. As stated in Section A *supra*, Charlotte has sent cease and desist letters to infringers of the mark. See Chillemi Declaration at ¶14 and corresponding

Exhibit K. Furthermore, GMA has also policed those seeking to register CHARLOTTE or a version thereof, as outlined in the following table:

| MARK | TTAB No. | STATUS |
| --- | --- | --- |
| Charlotte Jumper Classics | 91167274 | Judgment for GMA |
| Joie De Charlotte | 92045994 | Judgment for GMA |
| Charlotte Corday | 92046002 | Applicant in Default |
| Eau De Charlotte | 92046003 | Pending |
| Princess Charlotte | 92045997 | Judgment for GMA |
| Charlotte Lynggaard | 91158541 | Consent Abandonment of the Mark |
| Charlotte Tarantola | 91168132 | Pending |
| Charlotte Tillbury | 91171089 | Pending |
| Good Charlotte | 91171219 | Judgment for GMA |

See ¶ 17 of Chillemi Declaration

   ii)   **Third Party Registrations**

The applicant also states in its brief that there are numerous third party registrations for marks incorporating the name Charlotte. This is of no probative value whatsoever because registration evidence may not be given any weight in evaluating the strength of the mark, which is precisely what the applicant is trying to do in this instance. Old Tyme Foods, Inc. v. Roundy's, Inc., 961 F.2d 200, 204 (Fed. Cir. 1992). In fact, the existence of third party registrations is not evidence of what occurs in the marketplace (i.e. if the marks are in conflict in the marketplace), nor is it evidence that customers are actually familiar with them. Id. (citing AMF Inc. v. American Leisure Prods., Inc., 474 F.2d 1403, 1406 (CCPA

13

1973). See also, American Hosp. Supply Corp. v. Air Products and Chemicals, Inc., 194 U.S.P.Q. 340, 343 (TTAB 1997). The existence of on the register of confusingly similar marks should not aid an applicant to register another mark that is likely to cause confusion, mistake or to deceive. See, AMF Inc., 474 F.2d at 1406.

Even if third party registrations were deemed to be probative, applicant references several registrations that are of absolutely no consequence. For example, GMA has coexistence agreements with both the University of North Carolina at Charlotte for the UNC CHARLOTTE mark and with Charlotte Russe for its mark, CHARLOTTE RUSSE. See Chillemi Declaration at ¶¶ 17 and 18. In addition, many of the third party registrations noted by the applicant reference sports teams, which are clearly not at issue in this case, which deals exclusively with fashion items. See Chillemi Declaration at ¶ 12. In fact, GMA has aggressively policed its mark in those instances where there is potential confusion. See Chillemi Declaration at ¶16 and and accompanying Exhibit L1.

**G. Applicant does not Meaningfully Relate the Absence of Actual Confusion and Actual Confusion is not Needed in Order to Find a Likelihood of Confusion.**

The seventh DuPont factor involves the evaluation of the nature and extent of any actual confusion. DuPont, 476 F.2d at 1361. In its brief, applicant makes the unsupported assertion that there have been no instances of actual confusion between GMA's CHARLOTTE marks and the CHARLOTTE RONSON marks. See Applicant's Brief at Section C, pp. 23-24. The declaration of Charlotte Ronson is implemented in allegedly corroborating this statement. This

is of no consequence because the self-serving testimony of a corporate official is not conclusive that actual confusion did not exist. <u>Majestic Distilling Co., Inc.</u>, 315 F.3d at 1317 (citing <u>In re Bisset-Berman Corp.</u>, 476 F.2d 640, 642 (CCPA 1973). Furthermore, even if there was an absence of actual confusion in the matter at bar, that would not be probative with respect to finding a likelihood of confusion, because the lack of evidence of actual confusion carries little weight. <u>Majestic Distilling Co., Inc.</u>, 315 F.3d at 1317. It need not be proven in order for courts to find that there is a likelihood of confusion in a particular case. <u>See Giant Food, Inc.</u>, 710 F.2d at 1571.

**H. The Extent for Potential Confusion is Substantial**

The twelfth <u>DuPont</u> factor involves the examination of whether or not the extent for potential confusion is substantial or de minimus. When considering this factor, it is important to note that the Lanham Act affords a registrant exclusive rights in the registered marks for the goods recited in the registration throughout the United States, regardless of the extent of actual use. <u>In re: Shell Oil Co.</u>, 992 F.2d 1204, 1207 (Fed. Cir. 1993) (citing <u>In re: Appetito Provisions Co.</u>, 3 U.S.P.Q. 2d 1553, 1554 n.4 (TTAB 1987). The extent for potential confusion in this case is great given that GMA markets and sells a wide variety of clothing and accessories world-wide. Also, as stated the convergence between the applicant's and opposer's products is great as both of them sell clothing for young, trend-conscious women. The potential for confusion is substantial in this case because the relevant <u>DuPont</u> factors all point to the likelihood of consumer confusion.

I. **Bad Faith**

The thirteenth DuPont factor enables the Court to assess any other element which may be probative. Thus far, the applicant has tried to centralize the discussion of bad faith around the usage of the designer's first and last name. Applicant submits affirmations that they had no knowledge of Opposer's mark, stores, or marketing. However, the facts surrounding their usage of the mark and business strategy provides evidence that C. Ronson changed its brand to CHARLOTTE Ronson in 2005/2006 after it had constructive notice of the GMA CHARLOTTE mark. See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749 (1996).

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Board deny Applicant's Motion for Summary Judgment and grant summary judgment to the Opposer.

Dated:   New York, New York
         May 23, 2007

THE BOSTANY LAW FIRM

By: _____
    Medea B. Chillemi

40 Wall Street
New York, New York  10005
(212) 530-4400
Attorney for Plaintiff-Opposer

## Certificate of Service

I, Medea B. Chillemi, hereby certify that the following documents are being deposited with the United States Postal Service on May 23, 2007, postage pre-paid, and addressed to Mary L. Grieco, Esq.; Dreier,LLP; 499 Park Avenue; New York, NY 10022:

    Medea B. Chillemi's Declaration in Opposition to Applicant's Motion for Summary Judgment and Exhibits;

    Chief Financial Officer's Declaration in Opposition to Applicant's Motion for Summary Judgment and Exhibits; and

    Brief in Opposition to Applicant's Motion for Summary Judgment.

_____
*Medea B. Chillemi*
The Bostany Law Firm
40 Wall Street
New York, New York 10005
Attorneys for Opposer
GMA Accessories, Inc.