# Exhibit G

Westlaw.

Slip Copy

Page 1

Slip Copy, 2007 WL 766294 (S.D.N.Y.)
(Cite as: Slip Copy)

GMA Accessories, Inc. v. Croscill, Inc.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
GMA ACCESSORIES, INC., Plaintiff,
v.
CROSCILL, INC., Linens n' Things, Inc., Bed, Bath & Beyond Inc. and Burlington Coat Factory Warehouse Corporation, Defendants.
No. 06 Civ. 6236 GEL.

March 13, 2007.

John P. Bostany, The Bostany Law Firm, New York, N.Y. for Plaintiff GMA Accessories, Inc.
David Mark Rabinowitz and Philippe Alain Zimmerman, and Scott E. Silberfein, Moses & Singer LLP, New York, N.Y. for Defendants Croscill, Inc., Linens n' Things, Inc., and Burlington Coat Factory Warehouse Corporation.

*OPINION AND ORDER*
LYNCH, J.
*1 Plaintiff GMA Accessories, Inc. ("GMA"), which manufactures women's fashion items, brings this action for trademark infringement and related claims against Croscill, Inc. ("Croscill"), a manufacturer of bathroom accessories, and retailers Linens n' Things, Inc. and Burlington Coat Factory Ware House Corporation (collectively, "the retailers"), who sell Croscill's products. GMA moves, prior to the completion of discovery, for partial summary judgment of liability and a preliminary injunction, and for dismissal of defendants' counterclaims. The motions will be denied.

The dispute between the parties concerns the trademark "Charlotte." GMA has registered the mark for certain categories of women's fashion accessories such as handbags, hats, scarves, gloves, socks, hair clips, sunglasses and the like. Croscill uses the mark "Charlotte" to designate a line of coordinated bathroom products including towels, shower curtains, toothbrush holders, and jars. GMA maintains that Croscill's actions infringe its trademarks.

1. *Plaintiff's Motion for Summary Judgment*

As is well known, a party is entitled to summary judgment only when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well-established, moreover, that summary judgment motions prior to discovery are disfavored. "Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery."*Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000).

To obtain a preliminary injunction, a plaintiff must show that, absent injunctive relief, irreparable harm will occur, and "either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 113-14 (2d Cir.2006), citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

Substantively, a trademark owner can prevent others from adopting a confusingly similar mark. Whether there is a likelihood of confusion is determined by applying the eight-factor test established in *Polaroid Corp. v. Polaroid Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961):
Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 2

Slip Copy, 2007 WL 766294 (S.D.N.Y.)
**(Cite as: Slip Copy)**

bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

Applying these factors to the present record, it is plain that issues of fact abound as to whether plaintiff can establish a violation of its trademarks. Indeed, on the present record, plaintiff has not established even a likelihood, let alone a certainty, of success on the merits. It is thus entitled neither to summary judgment nor to a preliminary injunction.

*2 It is undisputed that GMA has registered the Charlotte trademark for various goods. The strength of the mark, however, is hotly disputed. The strength of a mark "turns on its origin-indicating quality, in the eyes of the purchasing public, so that in a given case whether the mark has acquired secondary meaning is a matter which may be relevant and probative and hence useful in determining the likelihood of confusion."*Lang v. Ret. Living Pub. Co.,* 949 F.2d 576, 581 (2d Cir.1991) (internal citations omitted). GMA has presented no evidence regarding consumer recognition of the mark as indicating origin of the goods. A factfinder could reach differing conclusions, based on the limited record before the Court, as to whether the parties even utilize " Charlotte" as a designator of origin, as opposed to simply as a style name, let alone whether the public recognizes it as such. "Lack of evidence that consumers associate the [mark] with [the trademark owner] weighs against finding the [mark] is strong in the market place."*M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha,* 250 F.Supp.2d 91, 102 (S.D.N.Y.2003). Nor has GMA presented evidence that the mark is heavily advertised, or other evidence from which its prominence in the marketplace may be inferred. Even in the case of a conceptually strong mark, the lack of such evidence could permit a factfinder to conclude that the mark is not especially strong for purposes of *Polaroid* balancing. Here, however, the parties even dispute its conceptual category, reasonably disagreeing about whether the mark should be regarded as arbitrary, as GMA contends, or as merely suggestive (as a woman's name applied to women's fashion items), as Croscill argues.

The second *Polaroid* factor, the degree of similarity between the marks, would appear clearly to weigh in GMA's favor, in that the mark is registered solely as a word mark, and the parties both use the identical word. At the same time, a reasonable factfinder could attach differing weights to the factor, given that there is some evidence that the typical typefaces and manner of use of the mark by the parties differ.

Most significantly, a reasonable factfinder could reach differing conclusions regarding the third factor, the proximity of the products, and the fourth factor, the likelihood that GMA would "bridge the gap" in the markets served by moving into Croscill's product areas. On the one hand, there is apparently no overlap whatsoever between the products manufactured by GMA and by Croscill. Croscill notes that fashion accessories like GMA's products are typically sold in different departments of large stores than bath accessories like Croscill's. On the other hand, it is hardly uncommon for the same designers or manufacturers to market both clothing and home decor items, and there is evidence that both parties' products are sold in some of the same stores. Reasonable factfinders could clearly reach different conclusions as to whether the products involved are or are not closely related. Similarly, the likelihood that GMA would "bridge" whatever distance exists between the products depends to some extent on how distant the factfinder believes they are. Croscill points to the fact that in 15 years of doing business, GMA has never manufactured any of the items on which Croscill uses the " Charlotte" name; however, a reasonable factfinder might (or might not) conclude that such items lie within GMA's zone of "natural business expansion." (Pl. Decl. in Supp. Mot. Dismiss Countercl. 5.) The "absence of a present intent to bridge the gap is not determinative. Rather, the assumptions of the typical consumer must be taken into account." *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 484 (2d Cir.1996), citing *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979) (internal quotation marks and alterations omitted). There is virtually no evidence in the present record from which the Court could draw any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conclusions about what the "typical consumer" or "ordinary purchaser," see *Lexington Mgmt. Corp. v. Lexington Capital Partners,* 10 F.Supp.2d 271, 298 (S.D.N.Y.1998), would think about the likelihood of GMA moving into Croscill's product lines, a question of fact that is more appropriately left to the cross-section of typical consumers and ordinary purchasers on the jury than decided on summary judgment.

**\*3** Importantly, as to the fifth factor, GMA has presented no evidence whatsoever of any actual confusion between plaintiff's and defendants' products. GMA rightly points out that such evidence is not necessary for it to prevail in this litigation. "[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear, U.S.A. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir.1986) It is perfectly correct that the absence of such evidence is not fatal to GMA's prospect of success in this lawsuit, but the question on summary judgment is not whether GMA *could* win but whether it is so clearly entitled to win that no reasonable factfinder could find against it. Plaintiff does not offer any survey of consumers of the sort that is typically used to test for possible confusion. The failure to undertake such a survey favors the defendant in a trademark case. *Nikon, Inc. v. Ikon Corp.,* 803 F.Supp. 910, 921-22 (S.D.N.Y.1992). The utter lack of evidence of actual confusion is certainly a factor that a reasonable factfinder would weigh, and would be entitled to weigh heavily, if it so chose, in performing the balancing required by *Polaroid.*

A similar problem relates to the sixth factor, defendants' good faith. GMA correctly notes that bad faith *may* be inferred from such factors as constructive knowledge of its prior use of the mark due to Croscill's failure to undertake a trademark search, especially where such knowledge is accompanied by strong similarities. *Star Indus., Inc. v. Bacardi & Co. Ltd.,* 412 F.3d 373, 389 (2d Cir.2005). But whether such an inference *will be* drawn is for the factfinder, and here a reasonable factfinder would have to consider also the utter absence of any evidence that Croscill deliberately adopted the name "Charlotte" in actual bad faith-that is, in order to capitalize on GMA's use of the mark, of which Croscill contends it was entirely ignorant.

The weight of the final two factors is also plainly disputable. There is no evidence in the record that the quality of Croscill's products is deficient in some way. GMA contends that this factor is not so important, and a jury may agree, but that is not a decision to be made on summary judgment. The record is equally slim regarding the sophistication of the relevant consumers: GMA doesn't even address this factor, and while Croscill suggests plausible inferences based on the price of the goods, a reasonable factfinder would not be required to accept those inferences.

In short, the record here is largely undeveloped, and is replete with genuine issues of material fact as to the facts relevant to most of the applicable factors, and as to the weight to be accorded to each. GMA's motion for summary judgment thus necessarily fails. Indeed, its showing is sufficiently weak that this Court cannot fairly conclude that it is likely to prevail on the merits. It thus is not entitled to a preliminary injunction. *See Louis Vuitton Malletier,* 454 F.3d at 114 (discussing standards for preliminary injunctions).

**\*4** Finally, though Croscill has not moved for summary judgment, it correctly notes that a court has the power to grant summary judgment against the moving party, *Wiradihardja v. Bermuda Star,* 802 F.Supp. 989, 995 (S.D.N.Y.1992), and suggests that the Court should do so. Such relief is clearly not warranted here. While GMA's case is hardly compelling, for all the reasons cited factual disputes preclude the award of summary judgment to either party. Croscill's demand for sanctions fares no better. Croscill has not filed a separate motion for sanctions under Rule 11, which in itself dooms its request. *See Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995) ("litigants must move for sanctions separately from other motions or requests" (internal citations omitted)). In any event, while GMA's motion is singularly unpersuasive, the Court cannot conclude that it is objectively

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 4
Slip Copy, 2007 WL 766294 (S.D.N.Y.)
**(Cite as: Slip Copy)**

frivolous.[FN1]

> FN1. Croscill includes in its memorandum in opposition to GMA's summary judgment motion an argument that the first count in GMA's complaint, which charges counterfeiting in violation of the Lanham Act but is captioned "Trade Dress Infringement," should be dismissed. (D. Mem. in Opp. to Mot. for Summ. J. 17-18.) GMA makes no response to this argument, which is perhaps unsurprising since the request for dismissal is not made as a formal motion. Croscill's point is well taken, however. Unless GMA responds to Croscill's argument by letter on or before April 2, 2007, that count will be deemed withdrawn and dismissed.

*2. Plaintiff's Motion to Dismiss Defendants' Counterclaims*

GMA also moves to dismiss defendants' counterclaims. As Croscill acknowledges, the identical counterclaims submitted by each defendant amount to nothing more nor less than a demand that plaintiff pay defendants' legal fees incurred in defending this case. (D. Mem. in Opp. to Mot. for Summ. J. 1.) The Lanham Act allows the award of counsel fees and expenses in extraordinary cases. 15 U.S.C. § 1117. Whether this is such a case will be determined by the Court after the case is resolved on the merits. In its brief reply submission, GMA implicitly concedes that defendants may properly make such a request, but contends that such a demand is not properly denominated a counterclaim. (Pl. Decl. in Supp. Mot. Dismiss Countercl. 4.) Such matters of form are of no significance. *See* Fed.R.Civ.P. 1. As the demand is properly before the Court, it will be considered at the appropriate time.

GMA, without any precedential support, attempts to argue that "plaintiff cannot be sued for taking action to stop the third party use of its registered trademark." (Pl. Mem. in Supp. Mot. Dismiss Countercl. 4.) But the Second Circuit has explicitly held that defendants may be awarded attorney's fees under the Lanham Act, 15 U.S.C. § 1117, in cases where an action has been brought in bad faith, and a court's inherent equitable powers. *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 194-95 (2d Cir.1996). *See also Juicy Couture, Inc. v. L'Oreal USA, Inc.,* No. 04 Civ. 7203, 2006 WL 2591478 (S.D.N.Y. Sept.11, 2006). Whether or not this lawsuit was brought in bad faith, of course, is a factual issue not to be determined on a Rule 12(b)(6) motion.

GMA also claims that the defendants lack standing to bring the counterclaims, though it does not explain this theory in any detail. (Pl. Decl. in Supp. Mot. Dismiss Countercl. 4.) Specifically, GMA claims that defendants lack all three of the constitutional elements for standing under *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). At this stage of the case, defendants have most certainly alleged facts that would satisfy their constitutional burden: the injury in fact is the expense incurred in defending this case, such expense was directly caused by the alleged bad faith prosecution by plaintiff, and the injury would be redressable by a recoupment of attorneys' fees.

*5 Plaintiff hardly bothers to explain the basis for its standing argument, asserting only that "[d]efendants are clearly missing all three minimum elements since they were not even parties to [p]laintiff's past litigation and were not affected by [p]laintiff's past litigation."(Pl. Decl. in Supp. Mot. Dismiss Countercl. 4.) The counterclaims, however, allege that "[p]laintiff has commenced and prosecuted this action without a good faith belief in the merits of any of its claims," referencing prior litigation as evidence of plaintiff's bad faith. (Answer ¶¶ 44-46.) Accordingly, plaintiff's standing argument is entirely without merit.

CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment and for a preliminary injunction, and its motion to dismiss defendants' counterclaims, are denied. Defendants' suggestion that summary judgment be entered in their favor is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 766294 (S.D.N.Y.)  
**(Cite as: Slip Copy)**

Page 5

denied. Defendants' request that Count I of the complaint be dismissed will be granted unless plaintiff responds to the request by April 2, 2007.

SO ORDERED.

S.D.N.Y.,2007.
GMA Accessories, Inc. v. Croscill, Inc.
Slip Copy, 2007 WL 766294 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.