Ira S. Sacks
Mary L. Grieco
Safia A. Anand
DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

Lisa T. Simpson
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 5th Avenue
New York, NY 10103
(212) 506-5100

*Attorneys for Plaintiff/Counterclaim Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
|  |  |  |
|---|---|---|
| SANEI CHARLOTTE RONSON LLC, | : | |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | Civil Action No. |
| | : | 07CV9578 (RWS)(DCF) |
| -against- | : | |
| | : | |
| | : | |
| GMA ACCESSORIES, INC., | : | |
| | : | |
| Defendant/Counterclaim Plaintiff | : | |

-------------------------------------------------------------x

## DECLARATION OF WARREN SINGH

WARREN SINGH declares as follows under penalty of perjury pursuant to 28

U.S.C. § 1746:

1.   For over year, I have served as the Litigation Support Manager for Dreier LLP in

New York, New York, attorneys for Plaintiff/Counterclaim Defendant, Sanei Charlotte Ronson

LLC ("Ronson").  Prior to that I served for 7 years in the Information Technology Department

1

and 3 years as Litigation Support Manager for Brown Raysman Millstein Felder & Steiner LLP,

now Thelen Reid Brown Raysman & Steiner LLP.  I submit this Declaration in support of

Ronson's motion for sanctions pursuant to Federal Rules of Civil Procedure Rule 37 against John

Bostany, the Bostany Law Firm (the "Bostany Firm") and GMA Accessories, Inc. ("GMA").

2.   My primary responsibility at both firms has been to manage the gathering of both

electronically stored information and hard copy files for production on behalf of our clients, load

these documents into searchable databases, make production to our adversaries, and to receive

document productions from our adversaries and either load it into a database or arrange an

existing database so that documents produced to us can be indexed, searched, accessed and

otherwise effectively made available to our attorneys.  My job responsibilities do not include

involvement in legal strategy; I function strictly as a technical resource.

3.   I have and do use, and am familiar with, most if not all of the commercially available

discovery management software available in recent years and at present, including Concordance,

Summation, Live Note, and various online review tools, including Kroll's Ontrack system.  I

have also customized such software for specific projects and participated in the preparation of

proprietary date management software.

4.   In the course of my career I have encountered document productions in just about

every form imaginable, including: images in PDF, JPEG, TIFF, PCX, BMP formats, e-mail in

Outlook, Outlook Express, Eudora, Lotus Notes, word processing documents in MS Word,

WordPerfect and Lotus 1-2-3, spreadsheets in MS Excel, Corel and Lotus 1-2-3, and technical

drawings, specifications and documentation in programs such as MS Visio, MS Project and MS

PowerPoint.  I have worked with computer source code written in the following languages,

HTML, Visual Basic, ASP, .NET and Cold Fusion, and various documents in specialized proprietary software applications.

5.     I have worked with a number of professional e-discovery vendors including Kroll-Ontrack, Lexis-Nexis Applied Discovery, Daticon, and Ikon. I frequently have coordinated with them the logistics of ensuring accurate document productions for counsel and parties involved in litigation and have successfully resolved technical and logistical problems with respect to productions with such vendors.

6.     In connection with this case, I received four CD ROM discs containing a multi-page PDF document production bearing bates stamps prefixed GMA. My initial inspection showed that only some of the discs had filenames matching the beginning document number, as is customary. The rest had a generic naming scheme giving no indication of the bates-numbered document at all. Also, no electronic cross-reference was provided to identify these documents.

7.     Typically the next step involved in order to give access to the production in a structured method is to process the documents using a Litigation Software Tool, such as IPRO TECH's eScan-IT. It allows the importation of files with the ability to number the pages corresponding to the bates stamp of the pages and output to a document review program. If one imports five 10-page documents, starting at XXX 0001, the last page of the document should be XXX 0050. After importing one CD ROM, the numbering was far off, which indicates gaps in the production. I attempted to re-align the numbering on a document-by-document basis it proved to be too numerous and painstaking to handle efficiently. I spot-checked the remainder of the document production finding similar instances of gaps throughout. For example, FILE145.pdf contains GMA015822-GMA015937 and the next record, FILE146.pdf contains

GMA015974-GMA016039.  This is a gap of 37 pages.  Additionally, 6271-6444.pdf , a 140 page file, has a bates range spanning 174 pages for some reason.

8.    In addition to finding the gaps, it was also easily noticeable that the pages within a PDF were from multiple documents.   For example, FILE66.PDF contains various document types, including emails, invoices and reports.  The production consisting of multiple PDFs – which usually indicates a new document break for each new file – turned out to be arbitrary and random, thus, making the document review more costly and burdensome.

9.    The foregoing examples are just a few of the many problems we have encountered in this document production.  To list them all would be too burdensome and the reviewers have not finished reviewing the documents at this time.

10.    Just about every document review system I have encountered – from the multi-faceted systems of the large service provider to the smaller platforms – allows you to categorize and index productions on a document level.  Because the GMA document production contained improper document breaks, we were forced to **print the entire production** (which supposedly consisted of 35,000 pages)[1] to determine proper document breaks and identify gaps.  The alternative was to incur costly charges from a vendor for doing the same thing, but with less accurate results.  This tripled the review process as well as the processing time typical in these cases.

11.    In doing a page-by-page review, the attorneys came upon pages that had bates stamps missing.  Usually, it would be safe to assume that the number fell in between the proceeding and following page; however, there were situations where the following page was

---

[1]   We do not believe that 35,000 pages were actually produced; however, we have not finished reviewing all of the documents yet and cannot be sure of the total page number at this time.

several numbers away in range making it harder to confirm with accuracy and causing problems for the reviewer and eventually the processing. A simple gap report identifying purposely omitted document numbers was not provided by GMA either, causing confusion when gaps occurred. The accuracy of the printout was in question every time and had to be confirmed with the PDF.

12.    In addition to the foregoing, a number of the pages in the production were cutoff. This was partly due to the fact that odd-sized documents of 8.3 x 11.7 in. were dispersed intermittently throughout the production. It was then necessary to open each PDF file individually to set custom print options to shrink the pages to fit on the traditional 8.5 x 11 in. letter-sized paper to ensure the bates stamp was visible. Attempting to automate through a batch print process would cause legal-sized documents to be shrunk to unreadable sizes. Other times the bates numbers were just not there. Also, some pages in the production were unnecessarily on legal size paper, which caused us to have to confirm for every cutoff page whether the document was actually cutoff, or whether the document needed to be printed on legal sized paper instead of letter size paper.

13.    Additionally, in reviewing the production, I (and the reviewers) realized that there were a number of duplicate documents in the production. Since the reviewers have not finished reviewing the production yet, we do not have an exact count of the duplicate documents at this time.

14.    With the combination of missing bates numbers, gaps, incorrect document breaks and compounded with a supposed 35,000 page production that has no discernable organization and grouping to the documents, it was difficult to manage the review accurately and efficiently.

Based on my past experiences, I have never seen a document production as egregious as this one and with so many glaring, avoidable errors. GMA placed the burden of checking its mistakes on our firm and at the cost to our client. This production was indeed a document dump. I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       April 10, 2008

_____
Warren Singh