UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
SANEI CHARLOTTE RONSON LLC,

        Plaintiff- Counterclaim defendant,


- against -

                                  Civil Action No.:  07CV9578 (RWS)(DF)

GMA ACCESSORIES, INC.,

        Defendant-Counterclaimant.
-------------------------------------------------X


# DECLARATION OF JOHN P. BOSTANY

    JOHN P. BOSTANY, hereby declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

    1.    I am a member of The Bostany Law Firm, attorney for Defendant-Counterclaimant.

    2.    The declaration is respectfully submitted specifically to address the discovery aspects of the motion filed by the DREIER firm on April 11, 2008 with a request for permission to further brief the sanctions aspects of the motion if those requests remain following the discovery conference scheduled before Magistrate Judge Freeman on May 2.

    3.    It is respectfully submitted that this motion is a concerted, mean spirited effort by the attorneys' for SANEI to harm counsel for GMA's bringing on an Order to Show Cause which was signed by Judge Harold Baer on March 26, 2008 for SANEI's contempt of a prior injunction issued by Judge Laura Taylor Swain.

    4.    The improper purpose of the motion is unveiled through several observations:

        (a)    Dreier opens its agreement with quotes from an 8 year old
              Magistrate's decision which Dreier fails to disclose was vacated by

Judge Whitman Knapp. Drier executed its improper use of this decision by attaching a law journal copy of it instead of using the usual Westlaw citation, which would have made it easier for this Court to discover that it was vacated. This purposeful concealment is indicative of Dreier's true intentions.

(b) Dreier quote's from unconnected sections of a March 14, 2008 transcript of a discovery conference in order to make it appear as if a March 5 discovery order was violated. In doing so, Dreier completely omits from its papers the very section of the transcript where the Court advised that the Order cited by the Dreier firm was satisfied by GMA.

(c) Dreier fails to disclose that the discs that it received of the GMA sales orders were duplicated from the documents as they are kept on this firms computer system and this was done pursuant to an agreement between Mr. Sacks and Mr. Bostany to save SANEI the cost of copying the documents from the originals at the GMA warehouse, which have been offered to Drier since December 2007. Drier rejected GMA's offer of just the most recent years of GMA's sales orders and instead requested every sales order that GMA still had for the past 10 years. Though this request was highly objectionable GMA not only agreed to accommodate Dreier but offered the documents on discs at the cost of .5 cents per page, a fraction of the .18 cents per page it would have cost Dreier's copy company to duplicate them. Dreier accepted, a paralegal was assigned to burn the discs and they were provided to Mr. Sacks. When Mr. Sacks found some bates stamp numbers missing, instead of seeking to confer, he included this

2

    complaint in his list of trumped up complaints in furtherance of a sanctions request.

5. In arguing that GMA violated a prior order concerning initial disclosures DREIER leaves out the Court's ruling that the response appeared satisfactory and if there remained any confusion that DREIER should meet and confer. See Ruling on pp. 47-51 of the March 14 transcript, completely omitted from DREIER's motion:

> THE COURT: Wait, wait, wait, wait, wait, wait. Okay. Sanei case and only Sanei case is what's currently in front of us. Okay. I'm putting off Eminent. I'm talking about the <u>Sanei</u> case.
>
> In the Sanei case, it is my recollection that there was an argument that GMA's Rule 26(a) disclosures were inadequate because they referred to documents from other litigations or proceedings without specifying what documents they were, without producing them, or without making clear that they had already been produced. And so counsel was not certain what documents you were referring to.
>
> What I take from what I have now, the limited information I have in front of me, is that after I said, be specific about what you're talking about in your Rule 26(a) disclosures. When you say X, explain what you mean. Either give it to them or list them for them, for example, by Bates

numbers, where they have already been produced in discovery in this case, meaning the Sanei case.

What you needed to do is you needed to say, the documents that we refer to in our initial 26(a) disclosures were previously produced to you as an Attachment A through E of this Bates number this through this produced a certain date, you know, the chart attached to that, and the sales records Bates Number this through this.

Okay. That's what you needed to do. What you did was you said, take the ones that are in the letter to you in another case, a December 4 letter that is not this case, but a letter to you happening to be the same counsel in another case, those are some of them. Okay. And in addition to that, a bunch of sales records that we're making available to you. Okay.

Now, with respect to the December 4 letter, that then makes me look at it, even though it's in another case, to see whether that is sufficiently clear. I don't know if that's sufficiently clear because I haven't seen the request for admissions. So I don't know if they were a grand total of two

4

advertisements exchanged, and everybody knows perfectly well what they are, or if -- you know, if that's not so clear.

It looks reasonably clear, but maybe it is, maybe it isn't. No one has spelled out for me, for example, where it says, "Exhibits to filings in this case and Ronson."

You mean all of them? What filings? What exhibits? Maybe you mean all of them. If that's what you mean, and if both counsel understand perfectly well what that is and know how to put their hands on it, then that's fine. If you don't understand something and it's still not clear what they're talking about, what is it that is not clear?

MR. SACKS: Your Honor, with respect to the categories listed in this letter, in the situations where Mr. Bostany has said, exchange in response to request for admissions in the <u>Eminent</u> case, I know what that is. And that is -- that's not such a big group of documents that it's a problem.

THE COURT: Okay, fine.

5

MR. SACKS: The only one -- the only one that is a problem is I need to know the date of the Sweeney declaration in terms of cease and desist communications, and the description of public doc --

THE COURT: I'm sorry.

MR. SACKS: That's cease and desist communications.

THE COURT: You need to know the date of the Sweeney declaration?

MR. SACKS: Yes. There's many Sweeney declarations.

THE COURT: Okay. So you said, and what date is the Sweeney declaration?

MR. SACKS: And then lastly, the reliance on public documents, that is a monstrous number of documents.

THE COURT: Okay. And so what further particular communication did you have on your meet and confer to say, I need to know more specifically which public documents you're

6

referring to. You have the letter on that and --

    MR. SACKS: We were told by Mr. Paltrowitz that they believe that this amended response was sufficient and they weren't going to further amend it.

    THE COURT: All right. Well, you're going to have a further conversation on this because, again, you are wasting my time by saying the particular problem is I don't which Sweeney declaration the particular problem is. This last item on this December 4 letter in this other case, you haven't said which ones. And Mr. Bostany, those are reasonable issues.

    MR. BOSTANY: Yeah. No, I'm not even speaking --

    THE COURT: So deal --

    MR. BOSTANY: -- because you're handling it to -- very thoroughly. I'm not even speaking.

    THE COURT: -- deal with the reasonable issues. Okay? Let's move on to the next one.

    MR. SACKS: Your Honor, the only next issue in the

Sanei case are just information that we believe -- information and documents and that GMA has agreed to produce. We've put this in the letter to confirm. And since Mr. Bostany hasn't looked at the letter until right before the conference, we're then done with the Sanei issues.

    THE COURT: All right. Let's move on to GMA's issues in Sanei. I'm going to hand this letter back down to you.

    MR. SACKS: Thank you, Your Honor.

    THE COURT: Do you want me to look at your March 12 letter?

    MR. BOSTANY: Yes, Judge, please.

THE COURT: Okay.

6. DREIER's citation to some 297 pages of discovery documents amidst the TTAB filings involving the CHARLOTTE trademark, is not a basis for Mr. Sacks to make the irresponsible and unprofessional accusation that another attorney lied about the TTAB proceedings being relevant to these proceedings also involving the CHARLOTTE mark.

7. The documents are kept in the ordinary course of business segregated by year at GMA's warehouse which DREIER has been invited to inspect on numerous occasions.

8. DREIER elected to take instead a copy of the documents as they are maintained on my firms computer.

9. We did not change the character of the documents or organize them differently and the personnel in charge of both the scanning and saving to our system over the years as well as the burning of discs for DREIER will be submitting separate declarations.

10. However, DREIER wanted the discs instead of inspecting and copying because our production of our firm's work product saved DREIER a lot of money both in inspecting and copying.

11. DREIER remains free to inspect the originals which have attached to them the same shipping documents and other back up documents that appear in the CD's we gave DREIER i.e. they were copied as they are maintained in the ordinary course of business.

12. The other documents, i.e. cease and desist letters, advertising, expenses, receipts, enforcement efforts were not grouped with the sales orders as DREIER attempts to mislead the court. These documents were produced separately to DREIER in hard copy form and DREIER admits are easily identifiable

13. Finally DREIER's argument that GMA has not adequately set forth the identity of the goods that it sells is not a fair complaint because DREIER attorney Ira Sacks already told the court that it was satisfied with the identification of the products by way of the list contained in the registrations.

```
        THE COURT: Where has he been informed of the
products? Which letter informed him of the products? Where
did you do that to inform him of all the products?


        MR. BOSTANY: I'm looking for it now, but it's a
letter that says:
```

"Refer to our registrations and you will see the products that we sell."

Our registrations contain a list of the products.

THE COURT: Registrations contained don't -- register -- if what your position is, our interrogatory answer is that all of the products that we have sold, are selling, or will be sold or offered for sale is exactly coextensive with the list of products in the registrations, the registrations have been produced to you, their Bates Number is this and that, that's an answer.

MR. BOSTANY: Yes. And the -- I'm sorry, and the applications which have also been --

THE COURT: Those are exactly coextensive. Those no one more here or one less there or anything? That's exactly it?

MR. BOSTANY: That's what my client tells me. They

haven't sold anything in addition to what has been identified in those documents that Mr. Sacks has.

 \*   \*   \*

 THE COURT: <u>So the answer is do you have all the registrations?</u>

 MR. SACKS: <u>Yes. We have all the registrations</u>.

 THE COURT: All right. So you have on the record today, and this is electronically recorded so a transcript can be made if necessary. You have on the record today that the products that have been, are being -- I'm sorry, have been sold, are being sold, or will be sold or offered for sale in connection with GMA Charlotte Marks are exactly coextensive with those that are listed in the registrations and the applications.

 MR. SACKS: And the applications.

 MR. BOSTANY: Well, except I object to "will be sold," Judge. I will not preclude GMA from entering other areas that

11

are not in the applications that are currently being filed.

      MR. SACKS: Okay. And then I --

      MR. BOSTANY: I mean, they can't be precluded from going into other areas because they're answering this interrogatory based on --

\*   \*   \*

      MR. SACKS: Your Honor, with respect to Interrogatory 4, <u>I'm happy to take the representation on the record now, as long as, if GMA changes its mind and wants to introduce something else in the future, that Mr. Bostany seasonably updates his response, as he's required to</u>.

      THE COURT: And the relevance on your end is to what it will do in the future?

      MR. SACKS: They have intent to use applications, Your Honor. They have to have a good-faith intent to use the applications in terms of will use. They have intent to use applications. We believe -- and without any issues under Rule 11, we believe that this --

\*   \*   \*

>       THE COURT: That's fine, but in terms of other
> potential future uses, that if they have a new idea of
> something they want to do, why exactly are you entitled to
> that?
>
>       MR. SACKS: I don't need that, Your Honor.
>
>       THE COURT: <u>Okay. All right. So you'll take what
> there is in their registrations and in the applications</u>.
>
>       *   *   *
>
>       THE COURT: How many products are we talking about?
> What are we talking about here? Are we talking about five
> products, ten, 500? What are we talking about?

MR. SACKS: <u>Probably between -- probably about fifty different products.</u> Fifty different classes of goods, and one of the problems we're having here today, Your Honor, is that the person who participated in the last two meets and confer isn't here because it wasn't Mr. Bostany.

14. And so for DREIER to now say in this motion for sanctions that GMA violated a prior discovery request by simply giving the names of the goods that are in the registrations, i.e. clothing, footwear and headgear, instead of listing all approximately 50 products is a frivolous complaint, both because Mr. Sacks already said he was satisfied with the list

13

contained in the registrations and because Mr. Sacks seemed sufficiently familiar from his review of the documents with the 50 different products sold by GMA.

15. While drafting this submission, this case settled. Therefore, it is respectfully asked that GMA be allowed to continue its briefing in the event that settlement is not consummated.

Dated: New York, New York
April 29, 2008

By:_____
JOHN P. BOSTANY (JB-1986)